STATE OF NORTH CAROLINA v. KEVIN MICHAEL TILLETT AND STATE OF NORTH CAROLINA v. CHESTER WARDELL SMITH, JR.

No. 801SC717

(Filed 3 February 1981)

1. **Arrest and Bail § 3.4— warrantless detention of defendants — officer's reasonable suspicion of criminal activity**

There was no merit to defendants' contention that an officer did not have reasonable suspicions based upon definite facts that defendants were engaged in or had engaged in criminal conduct when he stopped their vehicle, where the evidence tended to show that, while in the course of his duties, the officer saw defendants in their vehicle on a one-lane dirt road in a heavily wooded, seasonably occupied area; the hour was late, and the weather was rainy; the officer knew that the dirt road led to a number of seasonal residences, only one of which was occupied at that time of year; the officer also was aware of reports of "firelighting" deer in that area on several previous occasions; after seeing defendants' vehicle go into the wooded area, the officer left for a short time, and when he

returned, defendants' vehicle was coming out of the wooded area; and these facts, together with the reasonable inferences to be drawn therefrom, would justify the reasonable suspicion that the occupants of the vehicle might be engaged in or connected with criminal activity.

**2. Searches and Seizures § 34— warrantless search of vehicle — contraband in plain view**

Defendants' Fourth Amendment rights were not violated by a warrantless search of their vehicle where an officer had probable cause to suspect that defendants might be engaged in criminal activity; the officer was merely investigating defendants' activity in an area of seasonal residences when he shined his light into their vehicle and inadvertently saw what he, an experienced law enforcement officer, perceived to be a marijuana cigarette; and contraband was thus in plain view subject to lawful seizure; furthermore, given the cigarette in plain view, the gray plastic film container on the ground next to one defendant's foot, and the defendants' response of "yes" when asked if anything was in the vehicle, the trial court's findings clearly established a probability that other contraband was contained in the vehicle, therefore justifying the warrantless search of the vehicle in which the balance of the contraband was discovered and seized.

APPEAL by defendants from *Cornelius, Judge.* Judgments entered 20 February 1980 In Superior Court, DARE County. Heard in the Court of Appeals 6 January 1981.

Defendants were charged in proper bills of indictment with felonious possession of marijuana. On 19 February 1980, defendant Tillett and defendant Smith each filed a motion to suppress evidence obtained at the time of their arrest. After a hearing, the trial judge made findings which, except as quoted, are summarized as follows: On 13 November 1979, at approximately 9:40 p.m., Patrolman Wagoner of the Kill Devil Hills Police Department was patrolling alone when he entered Nags Head Woods, a "heavily wooded" area containing summer cottages, with only one such cottage occupied at that time of the year. This particular area was also inhabited by deer, and reports of "firelighting" deer in the area had been filed on previous occasions. It was raining and the roadway into Nags Head Woods was a "one-way dirt road, two cars having difficulty passing. . . ." Upon entering this area, Wagoner met a black Camaro automobile containing two males. Wagoner did not observe an inspection sticker on the vehicle. Wagoner continued on for "five or six miles, his intention was to allow the vehicle to go to the occupied dwelling should he choose to do so. . . ." Wagoner then turned around and "met the same vehicle coming out of Nags Head Woods . . ." and Wagoner "stopped in front of the vehicle with his lights on. . . ."

Wagoner

> approached the vehicle, asked the driver of the vehicle what he was doing and at that time he shined his flashlight into the vehicle and the driver informed him they were just riding; that upon shining his flashlight into the vehicle, he observed a white piece of paper folded up like a cigarette with a bulge in the center partially smoked on the console of the vehicle. . . .

Based on his training and experience, Wagoner formed an opinion that "it was marijuana," and he then told the driver he was going to have to search the car. No request for permission to search was made. Wagoner reached in and pulled out a sawed-off cue stick, and he noticed defendant Tillett "make a move through the rear glass of the vehicle." Wagoner "heard a noise three or four seconds later as he walked to the rear of the vehicle and saw a gray plastic film container on the ground near Mr. Tillett's foot. . . ." Wagoner picked up the container, unscrewed the cap, and found rice and some plastic cellophane. Upon unwrapping the plastic, Wagoner found "a small purple pill" and then Wagoner conducted a search of both defendants. Wagoner "asked if anything was in the vehicle and the response was 'yes' . . ." and Wagoner then found two "roaches" in the ashtray, a nine-inch fishing knife beside the seat, a twenty-five pound grocery bag containing "three plastic bags of green vegetable material" on the floorboard behind the driver's seat, a glass vial and another film container. Defendants were placed under arrest, and the next day Wagoner observed that the black Camaro did have a Virginia inspection sticker located in the center of the front windshield.

Based on these findings, the trial judge concluded that Wagoner had "reasonable suspicions based upon definite facts that the defendants were engaged in or had engaged in criminal conduct;" that Wagoner had "legal justification" to be where he was; that "the rolled cigarette appeared in plain view and based upon past experience and training . . . there was a reasonable suspicion that there was a connection between the items and criminal behavior;" that the discovery of the items was "inadvertent;" and that Wagoner "did not know the location beforehand and had not intended to seize them." Based upon the findings and conclusions, the trial judge denied defendants' motions to suppress, and thereafter both defendants pleaded guilty. From a judgment imposing a prison sentence,

which was suspended, of "not less than two years nor more than three years" for defendant Smith, and a judgment imposing a prison sentence of "not more than two years" for defendant Tillett, defendants appealed pursuant to G.S. § 15A-979(b).

*Attorney General Edmisten, by Assistant Attorney General William F. Briley, for the State.*

*Kellogg, White & Evans, by Thomas N. Barefoot, for the defendants appellants.*

HEDRICK, Judge.

[1]   Defendants first contend, based on their first, second, fourth, fifth, seventh, and ninth assignments of error, that the trial court erred in denying their motions to suppress because the findings of fact made by the trial judge after a hearing on the motions do not support the court's conclusion that "Officer Wagoner had reasonable suspicions based upon definite facts that the defendants were engaged in or had engaged in criminal conduct" when he stopped defendants' vehicle. We disagree. Generally, in deference to the Fourth Amendment prohibition against unreasonable "seizures," before a police officer can conduct an investigatory stop and detention of an individual, the officer must have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 61 L.Ed. 2d 357, 99 S.Ct. 2637 (1979). This protection has been extended to occupants of automobiles. *Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed. 2d 660, 99 S.Ct. 1391 (1979) (at least articulable and reasonable suspicion that occupants or vehicle somehow subject to seizure for violation of law). *See, e.g., State v. Thompson*, 296 N.C. 703, 252 S.E.2d 776, *cert. denied*, 444 U.S. 907, 62 L.Ed.2d 143, 100 S.Ct. 220 (1979); *State v. Greenwood*, 47 N.C. App. 731, 268 S.E.2d 835 (1980). Therefore, in examining whether the officer's conduct was proper in this situation, we must examine both the objective and articulable facts known to the officer at the time he determined to approach and investigate the activities of the occupants of the vehicle, and the rational inferences which the officer was entitled to draw therefrom. *State v. Thompson, supra.*

Relying on the findings made by the trial judge, which are supported by competent evidence and thus conclusive, *State v. Prevette*, 43 N.C. App. 450, 259 S.E.2d 595 (1979), upon what facts

and inferences were the officer's actions based? While in the course of his duties, Officer Wagoner saw defendants in their vehicle on a one lane dirt road in Nags Head Woods, a heavily wooded, seasonably unoccupied area. The hour was late, approximately 9:40 p.m., and the weather was rainy. The officer knew that the dirt road led to a number of seasonal residences, only one of which was occupied at that time of the year. The officer also was aware of reports of "firelighting" deer in that area on several previous occasions. After seeing defendants' vehicle go into the wooded area, the officer left for a short time, and when he returned, defendants' vehicle was coming out of the wooded area. To infer from these facts that the occupants of the vehicle were engaged in some sort of criminal activity, such as "firelighting" deer or burglarizing the unoccupied dwellings, would clearly not be unreasonable.These facts, together with the reasonable inferences to be drawn therefrom, when viewed through the eyes of an experienced police officer, would, we believe, justify the reasonable suspicion that the occupants of the vehicle might be engaged in or connected with criminal activity. The findings of the trial judge do therefore support the conclusion challenged by these assignments of error, and Officer Wagoner acted within the limits of the Fourth Amendment in making the investigatory stop of defendant's vehicle. These assignments of error have no merit.

[2] Defendants next contend, based on their third, sixth, eighth, and ninth assignments of error, that the court erred in denying their motions to suppress since the evidence was seized pursuant to a warrantless and thus unconstitutional search of their vehicle. Defendants argue that the court's findings do not support a conclusion that the warrantless search was justified under any of the exceptions to the Fourth Amendment prohibition against warrantless searches. We disagree.

These assignments of error purport to be based upon an exception to a finding of fact that "at the time [when vehicle searched] each defendant was placed under arrest . . ." and to the conclusions of law that "the rolled cigarette appeared in plain view . . ." and that "the discovery of the items was inadvertent and that the officer did not know the location beforehand and had not intended to seize them." We note at the outset that defendants do not argue that the evidence does not support the findings of fact made by the trial judge on their motions to suppress. Whether the statements by the

trial judge that the cigarette was "in plain view" and that "the discovery was inadvertent" are finding of fact rather than conclusions of law, is of no significance. In any event, the findings made are supported by the evidence.

"It is basic that, subject to a few specifically established exceptions, searches conducted without a properly issued search warrant are *per se* unreasonable under the fourth amendment, *Katz v. United States*, 389 U.S. 347, 19 L.Ed. 2d 576, 88 S.Ct. 507 (1967), . . ." *State v. Cherry*, 298 N.C. 86, 92, 257 S.E.2d 551, 556 (1979). One such exception is the "plain view" doctrine, under which a law enforcement officer may properly seize evidence in plain view without a search warrant if the officer has prior justification for the intrusion onto the premises being searched, other than observing the object which is later contended to have been in plain view, and the incriminating evidence must be inadvertently discovered by the officer while on the premises. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022, *rehearing denied*, 404 U.S. 874, 30 L.Ed.2d 120, 92 S.Ct. 26 (1971); *State v. Williams*, 299 N.C. 529, 263 S.E.2d 571 (1980). Another exception was discussed by this Court (Morris, Chief Judge) in *State v. Greenwood, supra:*

> The law is settled in North Carolina that a law enforcement officer may conduct a warrantless search of an automobile if the officer has a reasonable belief that the automobile contains contraband materials. [citations omitted] Such probable cause to search is established where, from the surrounding circumstances, there exists at least a "probability" that contraband substances are contained within the vehicle. [citation omitted]

*Id.* at 741, 268 S.E.2d at 841.

As pointed out above, Officer Wagoner was justified in stopping defendants' automobile and detaining defendants. The findings made by the trial judge demonstrate that the officer was merely investigating defendants' activity in Nags Head Woods when he shined his light into the vehicle and inadvertently saw what he, an experienced law enforcement officer, perceived to be a marijuana cigarette. Contraband was thus in plain view subject to lawful seizure. Furthermore, given the cigarette in plain view, the gray plastic film container on the ground next to defendant Tillett's foot and the defendants' response of "yes" when asked if anything

was in the vehicle, the findings clearly establish a "probability" that other contraband was contained in the vehicle, therefore justifying the warrantless search of the vehicle in which the balance of the contraband was discovered and seized. The findings of fact made by the trial judge support the conclusion that defendants' Fourth Amendment rights were not violated by the warrantless search of the vehicle under the circumstances of this case, and these assignments of error are without merit.

The court did not err in denying defendants' motions to suppress. The judgment appealed from is

Affirmed.

Judges MARTIN (Robert M.) and CLARK concur.