STATE OF NORTH CAROLINA v. JOHN HEYWOOD FOX

No. 8126SC1367

(Filed 7 September 1982)

1. Searches and Seizures § 44— motion to suppress—incompetent evidence at voir dire—presumption that court disregarded

Even if an officer was improperly permitted to express his opinion in a hearing on a motion to suppress that he had articulated his suspicions which warranted an investigatory stop of defendant, defendant was not prejudiced thereby where there was nothing in the record to rebut the presumption that incompetent evidence was disregarded by the trial judge.

2. Searches and Seizures § 12— investigatory stop of vehicle

An officer had an articulable and reasonable suspicion that defendant might be engaged in criminal activity so as to justify an investigatory stop of defendant's vehicle where the officer observed defendant at 12:50 a.m. driving slowly down a dead-end street of locked businesses previously fraught with property crime; one of the businesses had been broken into that very night; defendant was dressed shabbily but drove a "real nice" 1981 Chevrolet; and although defendant drove within two feet of the officer, defendant did not stop to ask directions or otherwise communicate with the officer but appeared to avoid his gaze.

Judge BECTON dissenting.

APPEAL by defendant from *Grist, Judge.* Judgment entered 21 October 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 7 June 1982.

Officer R. L. Bryant of the Charlotte Police Department on 1 August 1981, at approximately 12:50 a.m. observed a green 1981 Chevrolet moving south on North Tryon Street. The automobile turned left onto a dead end of Twenty-Seventh Street, where several padlocked businesses were located. Several break-ins had occurred in the area, and Officer Bryant had taken a report of a break-in from one of the businesses that evening. There was no residential housing on that part of the street.

Officer Bryant watched the Chevrolet move very slowly to a gate at the end of the street, stop, turn around, and proceed out of the dead end. Defendant's vehicle passed within two feet of Officer Bryant's patrol car, but defendant "cocked" his head away from the officer. Officer Bryant testified that he believed defendant was avoiding eye contact, and that although he thought de-

fendant may have simply been lost, defendant did not stop to speak to him. He was also of the opinion that defendant did not "fit in the area", his hair being styled into "forty or fifty" shoulder length braids, and that he was made suspicious by defendant's attire. Officer Bryant followed and stopped defendant. He did not observe any traffic or equipment violations. He discovered upon making a license check that defendant did not have a driver's license, that the Chevrolet automobile was stolen, and that defendant was a prison escapee.

Defendant was indicted for felonious possession of a stolen vehicle, and, preserving his right of appeal, pled guilty to the charge upon denial of his motion to suppress. He appeals from an order of imprisonment.

*Attorney General Edmisten, by Associate Attorney William H. Borden, for the State.*

*Ellis M. Bragg for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant argues that the court erred by permitting Officer Bryant to testify at the pretrial hearing on defendant's motion to suppress that he "expressed an articulated basis" for stopping defendant, and that it was error to deny defendant's motion to suppress evidence obtained pursuant to the stop and detention.

The following exchange took place on recross examination of Officer Bryant:

I did not arrest the defendant solely because of his appearance, that was not my sole basis. I took into consideration all of the things that I observed with respect to the defendant and the car he was in.

Q. It would be fair to say that based upon everything you observed about him you had a reasonable suspicion that he was engaged in some illegal activity at that time?

Mr. Bragg: Objection.

The Court: Overruled. Well, that's calling for a conclusion, though.

Q. You have expressed an articulated basis for your suspicions here today?

MR. BRAGG: Objection.

THE COURT: Overruled.

A. Yes, sir.

MR. BRAGG: Move to strike the answer.

THE COURT: Overruled. Any other questions?

Defendant contends that the witness should not have been allowed to express his opinion regarding whether he had articulated his suspicions in view of the mandate of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968), that an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts," *id.* at 906, warrant an investigatory stop, on the grounds that a non-expert may not testify as to a question of law. Though it is not apparent to us that the officer's answer was any more than a statement that he had articulated the facts known to him preceding his stop of the green Chevrolet, we hold that any error that may have occurred in the admission of this testimony was nonprejudicial. Even assuming that the evidence was improperly admitted, we find nothing to rebut the presumption that incompetent evidence was disregarded by the trial judge. See *State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976). Moreover, it is clear from the record that the court understood the legal prohibition against conclusory testimony from nonexperts. This assignment of error is overruled.

[2] Defendant maintains by his second assignment that he was stopped and detained by Officer Bryant in violation of his constitutional rights and that the court erred by refusing to order that all evidence obtained as a result of the intrusion be suppressed.

A police officer is authorized to stop a person without probable cause to arrest him if he observes unusual conduct making him reasonably suspicious that criminal activity may be afoot, and can point to specific facts that warrant the suspicion. *Terry v. Ohio*, supra. Our examination of the judge's findings of fact, which are based on the evidence and are thus conclusive, satisfies us

that Officer Bryant acted within the confines of the Fourth Amendment in making the investigatory stop of defendant's vehicle. Defendant was driving slowly down a dead-end street of locked businesses previously fraught with property crime. One of the businesses had been broken into, Officer Bryant believed, that very night. The stop occurred at a very early morning hour. Defendant was dressed shabbily but drove a "real nice" 1981 Chevrolet. He did not stop to ask directions, or otherwise communicate with the officer, though he drove within two feet of Officer Bryant, and appeared to avoid his gaze. We upheld the investigatory stop of a vehicle in *State v. Tillett and State v. Smith,* 50 N.C. App. 520, 274 S.E. 2d 361, *appeal dismissed* 302 N.C. 633, 280 S.E. 2d 448 (1981), on facts less compelling, perhaps, than these. There, an automobile travelling a dirt road was seen entering a heavily wooded, occasionally unoccupied area at about 9:40 p.m. The officer was aware of reports of "firelighting" deer in the area. He stopped the vehicle when it emerged from the area. We held it not unreasonable to believe the occupants of the vehicle were engaged in some sort of criminal activity. We hold in the case at bar, as we did in *Tillett,* that the facts "together with the reasonable inferences to be drawn therefrom, when viewed through the eyes of an experienced police officer, . . . justify the reasonable suspicion" that defendant "might be engaged in or connected with criminal activity." *Id.* at 524, 274 S.E. 2d at 364. The assignment of error is, therefore, overruled, and the order allowing the introduction of evidence acquired pursuant to the investigatory stop is

Affirmed.

Judge MARTIN concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

In *Delaware v. Prouse,* 440 U.S. 648, 663, 59 L.Ed. 2d 660, 673, 99 S.Ct. 1391, 1401 (1979), the United States Supreme Court held that

> . . . except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unli-

---

---

censed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

Believing that the majority has failed properly to consider the application of *Prouse* to the facts of this case, I dissent.

To reach its conclusion that Officer Bryant had a reasonable suspicion that defendant might be engaged in criminal activity, the majority relies on *State v. Tillett and State v. Smith*, 50 N.C. App. 520, 274 S.E. 2d 361, *appeal dismissed* 302 N.C. 633, 280 S.E. 2d 448 (1981). The *Tillett and Smith* Court relied upon *State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776 (1979). Significantly, *Thompson* was decided eleven (11) days before *Prouse*,[1] and *Tillett and Smith* is factually distinguishable from the case *sub judice*.

There was an arguable basis for stopping Tillett and Smith—Officer Wagner "did not observe an inspection sticker on the vehicle," 50 N.C. App. at 521, 274 S.E. 2d at 362, as is required by G.S. 20-183.2(a). In the case *sub judice*, the majority correctly points out that Officer Bryant "did not observe any traffic or equipment violations," ante p. 2. Further, in *Tillett and Smith*, Officer Wagner "approached the vehicle, asked the driver of the vehicle what he was doing[,] . . . shined his flashlight into the vehicle and" simultaneously observed, in Officer Wagner's opinion, marijuana. 50 N.C. App. at 522, 274 S.E. 2d at 362. In the case *sub judice*, Officer Bryant observed nothing about defendant to justify the intrusion.

I am particularly concerned that the majority deems significant the fact that the "[d]efendant was dressed shabbily but drove a 'real nice' 1981 Chevrolet" and that the defendant "did not stop to ask directions, or otherwise communicate with the officer, though he drove within two feet of Officer Bryant, and appeared to avoid his gaze." The majority's reasoning subjects most people

---

1. It is also significant to note that the facts in *Thompson* did not compel unanimity in our appellate courts. Judge Erwin dissented in 37 N.C. App. 628 (1978), and Justice Exum dissented in 296 N.C. 703 (1979).

on late-night (or even weekend) errands to the grocery store to police detention. The law has yet to deem shoulder-length braids on males or any other non-mainstream lifestyle, even while worn in a Chevrolet, as grounds for suspicious inference. *Compare United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed. 2d 607, 95 S.Ct. 2574 (1975), in which the Supreme Court rejected the Border Patrol's argument that it was lawful to stop cars late at night near the border because the occupants appeared to be of Mexican descent. Further, to construe a "cock" of the head as an intent to avoid a gaze (of the officer) rather than a glare (of the oncoming cruiser's headlights) is to "invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, . . ." *Terry v. Ohio*, 392 U.S. 1, 22, 20 L.Ed. 2d 889, 906, 88 S.Ct. 1868, 1880 (1968).

Officer Bryant himself testified that he thought defendant may have been lost. Based on *Delaware v. Prouse*, I do not believe Officer Bryant had a reasonable and articulable suspicion that criminal activity was afoot when he observed defendant driving slowly from a dead-end street "of locked businesses previously fraught with property crime." Ante, p. 4.

In my opinion, the defendant's motion to suppress the evidence should have been allowed.