STATE OF NORTH CAROLINA v. KEVIN MICHAEL CHLOPEK

No. COA10-766

(Filed 18 January 2011)

**Search and Seizure— traffic stop—no reasonable suspicion—
motion to suppress improperly denied**

The trial court erred in a driving while impaired case by denying
defendant's motion to suppress evidence because the officers did
not have reasonable suspicion to stop defendant's vehicle.

Appeal by Defendant from order and judgment entered 10
December 2009 by Judge William Pittman and Judge Abraham Penn
Jones, respectively, in Wake County Superior Court. Heard in the
Court of Appeals 1 December 2010.

*Attorney General Roy Cooper, by Assistant Attorney General
Tammera S. Hill, for the State.*

*James N. Freeman, Jr. for Defendant.*

STEPHENS, Judge.

*I. Procedural History*

On 25 April 2008, Defendant Kevin Michael Chlopek was arrested
for driving while impaired. Defendant's case was called for hearing on
his "Motion to Suppress Evidence" on 4 November 2009 in Wake
County Superior Court. The trial court denied Defendant's motion by
order entered 10 December 2009, the Honorable William Pittman
presiding. Defendant subsequently entered a plea of guilty to the
charge of driving while impaired while reserving his right to appeal
the denial of his motion to suppress. The trial court entered judgment
on 10 December 2009 sentencing Defendant to a suspended sentence,
the Honorable Abraham Penn Jones presiding. Defendant gave notice
of appeal in open court.

*II. Factual Background*

The evidence presented at the suppression hearing tended to
show the following: On 25 April 2008 at approximately 12:05 a.m.,
Deputies David Chamblee and Phillip Chapman of the Wake County
Sheriff's Department were conducting a traffic stop just inside the
entrance to the Olde Waverly Place subdivision, a partially- developed
subdivision in eastern Wake County. While the officers were
conducting the stop, Deputy Chapman noticed another vehicle approach

the entrance to the subdivision. Deputy Chapman described the vehicle as "a white Chevrolet 1500 single cab, like a construction-style truck. Had a lot of dings and scratches. It appeared to be a construction, which you would normally see, construction-type vehicle[.]" He noted that Defendant was driving the truck and that there was a dog in the truck. Deputy Chapman did not notice anything abnormal about the manner in which the vehicle entered the subdivision and testified that the

> [v]ehicle entered the subdivision just like any other vehicles would in that situation.
>
> . . . .
>
> The vehicle proceeded in a normal manner. Driver of the vehicle, I noticed, what drew my attention was that he had a dog in the vehicle.
>
> As he was passing by he seemed a little nervous in his manner of observing us observing him.

Defendant proceeded past the officers toward the undeveloped portion of the subdivision. Deputy Chamblee testified that officers had been put on notice that there had been a large number of copper thefts from subdivisions under construction in the south side of Wake County. However, no such thefts had been reported in the Olde Waverly Place subdivision, nor had any other crimes been reported in that subdivision. When Defendant exited the subdivision 20 to 30 minutes later, Deputy Chapman initiated a traffic stop of Defendant's vehicle. Deputy Chapman and Deputy Chamblee had not discussed stopping Defendant's vehicle.[1]

### III. Discussion

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress because the officers did not have reasonable suspicion to stop Defendant's vehicle. We agree.

On appeal, we review a trial court's denial of a motion to suppress to determine "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (citing *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820

---

1. No evidence was presented regarding what transpired after Defendant was stopped by Deputy Chapman.

(1991)), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003). "[T]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations and quotation marks omitted). We review the trial court's conclusions of law, however, *de novo. State v. Brooks*, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994).

Our federal and state constitutions protect individuals "against unreasonable searches and seizures." U.S. Const. amend. IV; N.C. Const. art. I, § 20. A traffic stop is a seizure "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667 (1979). Nevertheless, a traffic stop is generally constitutional if the police officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968)).

> Only unreasonable investigatory stops are unconstitutional. An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.
>
> A court must consider the totality of the circumstances—the whole picture in determining whether a reasonable suspicion to make an investigatory stop exists. The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch.

*State v. Campbell*, 359 N.C. 644, 664, 617 S.E.2d 1, 14 (2005) (internal citations and quotation marks omitted). Thus, "[r]easonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (quoting *Wardlow*, 528 U.S. at 123, 145 L. Ed. 2d at 576), *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008). Even so, the requisite degree of suspicion must be high enough "to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979).

In *State v. Murray*, 192 N.C. App. 684, 666 S.E.2d 205 (2008), a police officer was performing a property check of the Motorsports Industrial Park in Concord at approximately 3:41 a.m. The officer was "patrolling the main road and checking the buildings and parking lots in the area as part of a 'problem oriented policing project' begun . . . following reports of break-ins of vehicles and businesses in the Park." *Id.* at 684, 666 S.E.2d at 206. As the officer rounded a curve on the main road, "he 'passed a vehicle coming out of the area,' which he thought was 'kind of weird,' as he 'hadn't seen the vehicle in any of [his] earlier property checks around the businesses.' " *Id.* at 685, 666 S.E.2d at 206. The officer turned around and pulled behind the vehicle to " 'run its license plate and just see if maybe it was a local vehicle.' " *Id.*

When asked if the vehicle was acting any differently than other cars the officer had stopped in the past, which he had determined were not engaged in any unlawful activity, the officer answered that the vehicle " 'was just leaving the area' " and was not doing anything different. *Id.* at 688, 666 S.E.2d at 208. The officer

> conceded that the vehicle was not violating any traffic laws, was not trespassing, speeding, or making any erratic movements, and was on a public street. Moreover, his check of the license plate showed that the vehicle was not stolen and was in fact a rental vehicle from nearby Charlotte.

*Id.* at 685, 666 S.E.2d at 206. Nevertheless, the officer " 'decided to go ahead and do an investigatory traffic stop on [the vehicle] to find out what they were doing in that location.' " *Id.* This Court concluded that the officer

> never articulated any specific facts about the vehicle itself to justify the stop; instead, all of the facts relied on by the trial court in its conclusions of law were general to the area, namely, the "break-ins of property at Motorsports Industrial Park . . . the businesses were closed at this hour . . . no residences were located there . . . this was in the early hours of the morning," and would justify the stop of *any* vehicle there.

*Id.* at 689, 666 S.E.2d at 208.[2] Indeed, the trial court found that the officer " 'had found no broken glass, lights on or other suspicious

---

2. *Cf. State v. Watkins*, 337 N.C. 437, 442-43, 446 S.E.2d 67, 70-71 (1994) (finding reasonable suspicion based on the late-night hour of the stop, a car moving without lights in the parking lot of a closed business, the generally rural nature of the area, and

circumstances at any' of the businesses he had checked, to suggest that there had been a break-in that night.' " *Id.* Thus, this Court held that the trial court's conclusion of law that the officer's stop of the vehicle in question " 'was justified by a reasonable suspicion based on objective facts' " was erroneous, and that the officer's stop of the vehicle "was based only on his 'unparticularized suspicion or hunch' and does not meet the minimal level of objective justification necessary for an investigatory traffic stop." *Id.* Accordingly, this Court reversed the denial of defendant's motion to suppress and remanded the case to the trial court for further proceedings. *Id.* at 690, 666 S.E.2d at 209.

In this case, the trial court made the following findings of fact:

1. Deputy Chamblee was . . . on duty with the Wake County Sheriff's Department on or about April 25, 2008 at 12:05 AM;

2. That Deputy Chamblee was conducting an unrelated traffic stop in the Olde Waverly Subdivision in Fuquay-Varina, North Carolina;

3. That Deputy Chapman was also present during this unrelated traffic stop and was supervising Deputy Chamblee;

4. That during that traffic stop, Deputy Chamblee observed a Chevrolet pickup truck, driven by the Defendant, turn into Olde Waverly Subdivision;

5. That the unrelated traffic stop continued for an additional twenty to thirty minutes;

6. That upon completion of this traffic stop, Deputy Chamblee observed the Defendant begin to exit the subdivision;

7. That although Deputy Chamblee testified there had not been any thefts in that particular subdivision, there had been a large number of copper thefts reported in Wake County;

a tip that a "suspicious vehicle" had been seen in that location); *State v. Fox*, 58 N.C. App. 692, 695, 294 S.E.2d 410, 412-13 (1982) (reasonable suspicion based on the very early morning hour, the location on a dead-end street with locked businesses in an area with a high incidence of property crime, the appearance of the driver contrasted with the nature of the vehicle, the driver's apparent attempt to avoid the officer's gaze, and the officer's belief that one of the businesses had been broken into that same night), *aff'd per curiam*, 307 N.C. 460, 298 S.E.2d 388 (1983); *State v. Tillett*, 50 N.C. App. 520, 521-24, 274 S.E.2d 361, 362-64 (reasonable suspicion based on late hour and bad weather at time of stop, location on one-lane dirt road in "heavily wooded, seasonally unoccupied" area, reports of "firelighting" deer, and the fact that officer did not observe an inspection sticker on the vehicle), *appeal dismissed*, 302 N.C. 633, 280 S.E.2d 448 (1981).

8. That Deputy Chamblee described the Defendant's vehicle as "an older dinged-up work-type truck typical of a construction vehicle;"

9. That Deputy Chamblee testified that the Olde Waverly Subdivision was a partially completed housing development and some lots within the subdivision are still under construction;

10. That Deputy Chapman initiated a traffic stop by waiving his flashlight and putting his hands in the air.

Defendant does not challenge any of the trial court's findings of fact, and, thus, the findings "are deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, *disc. review denied*, 358 N.C. 240, 594 S.E.2d 199 (2004). Based on these findings of fact, the trial court concluded:

1. The stop was made based on the following totality of the circumstances: the Defendant's presence at that time of night in a partially developed subdivision, driving a vehicle described as a "work truck," and during a time where numerous copper thefts had been reported in Wake County;

2. Based on the totality of the circumstances, Deputy Chapman had reasonable suspicion to believe that criminal activity was afoot.

Defendant argues that the findings of fact do not support the conclusion of law that "[b]ased on the totality of the circumstances, Deputy Chapman had reasonable suspicion to believe that criminal activity was afoot." We agree.

Here, as in *Murray*, Deputy Chamblee did not articulate, and the trial court did not find, any specific facts about the vehicle itself which would justify the stop. Deputy Chamblee testified that Defendant's "construction-style truck" was the type of vehicle "you would normally see" in a construction area. Moreover, Defendant's "[v]ehicle entered the subdivision just like any other vehicle[] would in that situation" and "proceeded in a normal manner." In fact, what actually drew Officer Chamblee's attention to Defendant's vehicle "was that [Defendant] had a dog in the vehicle."[3]

Instead, as in *Murray*, the facts relied upon by the trial court in concluding that reasonable suspicion existed were general to the

---

3. "Dogs love to go for rides. A dog will happily get into any vehicle going anywhere." Dave Barry (humor columnist and Pulitzer Prize winning author)..

area, namely, "Defendant's presence at that time of night in a partially developed subdivision . . . during a time where numerous copper thefts had been reported in Wake County."[4] As in *Murray*, such general findings do not support the trial court's conclusion of law that "Deputy Chapman had reasonable suspicion to believe that criminal activity was afoot." Accordingly, Deputy Chapman's stop of the vehicle based only on his "unparticularized suspicion or hunch" does not meet the minimal level of objective justification necessary for an investigatory traffic stop. *Campbell*, 359 N.C. at 664, 617 S.E.2d at 14 (citations and quotation marks omitted). Therefore, we reverse the denial of Defendant's motion to suppress and remand this case to the trial court for further proceedings.

REVERSED and REMANDED.

Judges STEELMAN and HUNTER, JR. concur.

--------

4. We further note that while the officer in *Murray* was patrolling the Park as part of increased security measures implemented "following reports of break-ins of vehicles and businesses *in the Park*[,]" *Murray*, 192 N.C. App. at 684, 666 S.E.2d at 206 (emphasis added), Deputy Chamblee was not aware of any reports of copper thefts specifically in the Olde Waverly Place subdivision nor any reports of other crimes committed in that subdivision.