IN THE SUPREME COURT OF NORTH CAROLINA

No. 451PA12

FILED 12 APRIL 2013

STATE OF NORTH CAROLINA

v.

KEVIN EARL GRIFFIN

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 732 S.E.2d 394 (2012), reversing an order denying defendant's motion to suppress entered on 24 June 2011 by Judge Kenneth F. Crow and vacating a judgment entered on 3 October 2011 by Judge Marvin K. Blount, III, both in Superior Court, Pamlico County. Heard in the Supreme Court on 12 March 2013.

> *Roy Cooper, Attorney General, by Kathryne E. Hathcock, Assistant Attorney General, for the State-appellant.*

> *Robert G. Raynor, Jr. for defendant-appellee.*

NEWBY, Justice.

In this case we must determine whether defendant's constitutional rights were violated by the traffic stop that led to his conviction for driving while impaired. Based on the totality of the circumstances, we conclude that defendant's stopping in the middle of the roadway and turning away from a license checkpoint gave rise to a reasonable suspicion that defendant may have been violating the law. Because the

subsequent stop of defendant's vehicle is constitutional, we reverse the decision of the Court of Appeals.

On the night of 5 January 2009, Trooper Scott Casner of the North Carolina Highway Patrol was conducting a license checkpoint on Highway 306 close to two intersections. The checkpoint was marked and illustrated by activated blue lights of patrol cars. Trooper Casner and at least one other law enforcement officer were present at the checkpoint at all times. At approximately 9:55 p.m. Trooper Casner observed a vehicle approaching the checkpoint from the west on Seafarer Road. Then the vehicle, although not at an intersection, stopped in the middle of the road and appeared to initiate a three-point turn by beginning to turn left and continuing onto the shoulder of the road. Trooper Casner testified that these actions caused him to suspect that the driver was attempting to avoid the checkpoint. Trooper Casner was able to stop the driver before he could complete the turn and leave the area. Trooper Casner approached the vehicle and asked for the driver's operator's license, at which time the trooper detected the odor of alcohol on defendant, the driver. Trooper Casner subsequently charged defendant with, *inter alia*, driving while impaired.

On 4 June 2010, defendant moved to suppress the evidence from the stop, arguing that his attempt to turn around did not provide reasonable suspicion for Trooper Casner to stop defendant's vehicle because the checkpoint was unconstitutional. The trial court concluded that the checkpoint was valid and that

"Trooper Casner clearly had reasonable and articulable suspicion to stop the defendant," finding that Trooper Casner observed defendant approach the checkpoint, then "stop in the roadway and turn his vehicle around." As a result, the trial court denied defendant's motion to suppress. Defendant pled "no contest" to driving while impaired, reserving his right to appeal under N.C.G.S. § 15A-979(b). The Court of Appeals reversed the trial court's denial of defendant's motion to suppress and vacated the resulting judgment, holding the checkpoint to be unconstitutional. *State v. Griffin*, ___ N.C. App. ___, 732 S.E.2d 394, 2012 WL 4501653, at *3 (2012) (unpublished). The Court of Appeals, however, did not comment on whether reasonable suspicion for the stop existed.

We allowed the State's petition for discretionary review to determine, *inter alia*, whether there was reasonable suspicion to initiate a stop of defendant's vehicle. *State v. Griffin*, ___ N.C. ___, 734 S.E.2d 861 (2012). The State argues that, regardless of the checkpoint's constitutionality, defendant's attempt to evade the checkpoint gave Trooper Casner the requisite level of suspicion to further investigate the situation. As such, the State contends that the trial court was correct in denying defendant's motion to suppress the evidence from the stop. Defendant, on the other hand, argues that there was nothing unusual about his turn and therefore, there was no independent basis for making the stop.

Both the Fourth Amendment to the United States Constitution and the North Carolina Constitution protect individuals "against unreasonable searches

and seizures." U.S. Const. amend. IV; *accord* N.C. Const. art. I, § 20. "A traffic stop is a seizure 'even though the purpose of the stop is limited and the resulting detention quite brief.' " *State v. Barnard*, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660, 667 (1979)), *cert. denied*, 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008). Our Court has held that "reasonable suspicion is the necessary standard for traffic stops." *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008) (citations omitted).

> Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Only " 'some minimal level of objective justification' " is required. This Court has determined that the reasonable suspicion standard requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Moreover, "[a] court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion" exists.

*Barnard*, 362 N.C. at 247, 658 S.E.2d at 645 (alterations in original) (internal citations omitted).

We examined a similar issue in *State v. Foreman*, in which an officer observed a vehicle travelling towards a checkpoint make a "quick left turn" onto a connecting street, after which the officer found the car parked in a residential driveway. 351 N.C. 627, 629, 527 S.E.2d 921, 922 (2000). In *Foreman* the

defendant driver was charged with DWI, and she moved to suppress the evidence obtained from the stop. *Id*. at 628, 527 S.E.2d at 922. We concluded that, "[a]lthough a legal turn, by itself, is *not* sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances, such as the time, place and manner in which it is made, *may* constitute a reasonable, articulable suspicion which could justify an investigatory stop." *Id*. at 631, 527 S.E.2d at 923. This Court noted that " 'flight—wherever it occurs—is the consummate act of evasion: [i]t is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.' " *Id*. at 631, 527 S.E.2d at 924 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570, 576 (2000)).

Our decision in *Foreman* is in accord with precedent from the Fourth Circuit Court of Appeals. *See United States v. Smith*, 396 F.3d 579 (4th Cir.), *cert. denied*, 545 U.S. 1122, 125 S. Ct. 2925, 162 L. Ed. 2d 309 (2005). In *Smith* law enforcement officers conducting a license checkpoint observed a vehicle driving "about 985 feet from the checkpoint" appear to " 'slam on its brakes,' " and then "turn left onto a private gravel driveway leading to a single residence." *Id*. at 581. As a result, the police approached the vehicle and eventually charged the defendant driver with possession of a firearm by a convicted felon. *Id*. at 582. The federal district court denied the defendant's motion to suppress the evidence resulting from the stop. *Id*. The Fourth Circuit affirmed the district court, holding that "when law enforcement officers observe conduct suggesting that a driver is attempting to evade a police

roadblock—such as . . . behavior indicating the driver is trying to hide from officers—police may take that behavior into account in determining whether there is reasonable suspicion to stop the vehicle and investigate the situation further." 396 F.3d at 585 (citations omitted).

This case presents a situation comparable to the facts the courts encountered in *Foreman* and *Smith*. Defendant approached a checkpoint marked with blue flashing lights. Once the patrol car lights became visible, defendant stopped in the middle of the road, even though he was not at an intersection, and appeared to attempt a three-point turn by beginning to turn left and continuing onto the shoulder. From the checkpoint Trooper Casner observed defendant's actions and suspected defendant was attempting to evade the checkpoint. Defendant's turn in the middle of the road and onto the shoulder was more suspicious than the defendant's turn onto a connecting street in *Foreman* and the defendant's turn into a private driveway in *Smith*. It is clear that this Court and the Fourth Circuit have held that even a legal turn, when viewed in the totality of the circumstances, may give rise to reasonable suspicion. Given the place and manner of defendant's turn in conjunction with his proximity to the checkpoint, we hold there was reasonable suspicion that defendant was violating the law; thus, the stop was constitutional. Therefore, because the trooper had sufficient grounds to stop defendant's vehicle based on reasonable suspicion, it is unnecessary for this Court to address the

constitutionality of the driver's license checkpoint.   Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.


Justice BEASLEY, dissenting.

Because I disagree with the majority's holding that the stop of defendant's vehicle was justified by reasonable suspicion, I would remand the case to the trial court for further findings of fact regarding the constitutional and statutory validity of the checkpoint.  Therefore, I respectfully dissent.

It is first necessary to clarify the facts surrounding defendant's left turn.  The majority states several times that defendant "appeared to initiate a three-point turn" and notes that defendant was not at an intersection at the time in what appears to suggest that defendant's actions were illegal.  However, a review of the transcript from the hearing on defendant's Motion to Supress reveals that, upon cross-examination, Trooper Casner himself stated that defendant's actions were not illegal:

> Q. But he just made a left turn; is that correct?
>
> A. Onto the shoulder, yes.
>
> Q. That's not an illegal turn; is it?
>
> A. A left turn is not an illegal turn.

Q. And you never gave him a moving violation for that; did you not?

A. No.

(T. 25) Further, Trooper Casner in no way suggests that defendant was making a three-point turn. The trial court asked Trooper Casner if defendant's turn was "in the form of making a three-point turn like making a 180 degree direction change," and Trooper Casner replied, "It could have been. I'm not exactly sure what his intentions were." (T. 10) And, while it is clear that defendant did not turn at a major intersection of roadways, Trooper Casner's recollection of the point on the road at which defendant turned was inconsistent. On direct examination, he stated that he could not "remember if there was a driveway right there or not." (T. 10) Then on cross-examination, he stated, "I said when he traveled off the road – when he made that left turn into the open field that's when we made the traffic stop to find out why he was turning in there." (T. 26) Thus, defendant's turn was legal, and, by Trooper Casner's own admission, it was unclear whether defendant was indeed attempting to turn around. These facts help to frame a proper analysis of whether Trooper Casner's suspicions were reasonable.

Though *State v. Foreman*, 351 N.C. 627, 527 S.E.2d 921 (2000), is factually distinguishable, *Foreman* provides the rule to resolve this case. We held that "[a]lthough a legal turn, by itself, is *not* sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances, such as

the time, place and manner in which it is made, *may* constitute a reasonable, articulable suspicion which could justify an investigatory stop." *Id.* at 631, 527 S.E.2d at 923. Perhaps, implicitly, the majority believes that the checkpoint itself is relevant to the "time, place, and manner" of defendant's turn. *Id.* I would agree that the existence of the checkpoint can be used in the trial court's determination of whether there is reasonable suspicion; however, the trial court must also determine the validity of the checkpoint if it is to be used in determining whether there was reasonable suspicion to stop a vehicle because it turned away from the checkpoint. *See State v. Barnard*, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008) ("The Fourth Amendment protects individuals "against unreasonable searches and seizures." The North Carolina Constitution provides similar protection. A traffic stop is a seizure "even though the purpose of the stop is limited and the resulting detention quite brief." (internal citations omitted)); *State v. McKinney*, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006) ("Fourth Amendment rights are enforced primarily through the 'exclusionary rule,' which provides that evidence derived from an unconstitutional search or seizure is generally inadmissible in a criminal prosecution of the individual subjected to the constitutional violation. . . . The 'fruit of the poisonous tree doctrine,' a specific application of the exclusionary rule, provides that '[w]hen evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the 'fruit' of that unlawful conduct should be suppressed.' " (internal citations omitted)); *State v.*

*Mitchell*, 358 N.C. 63, 66, 592 S.E.2d 543, 545 (2004) ("Police officers effectuate a seizure when they stop a vehicle at a checkpoint."). Without the checkpoint, Trooper Casner would not have been in a position to observe defendant's turn and defendant would not have been in a position to allegedly avoid the checkpoint. Thus, because Trooper Casner, and the State, predicate Trooper Casner's reasonable suspicion to stop defendant upon Trooper Casner's presence at the checkpoint and defendant's suspected avoidance of the checkpoint, it is necessary to first determine whether the existence of that checkpoint was constitutional.

The constitutionality of the checkpoint, however, cannot be decided by this Court in the present appeal. The trial court concluded that the checkpoint was valid under both the North Carolina and United States Constitutions but failed to make findings of fact that would support this conclusion. Thus, this case must be remanded to the trial court for further findings of fact regarding the constitutional and statutory validity of the checkpoint.

This Court has been less than clear on how a trial court should approach a constitutional analysis of a checkpoint. The State contends that *State v. Mitchell*, 358 N.C. 63, 592 S.E.2d 543 (2004), recognized two factors: whether a supervisor approved the checkpoint and whether the officer conducting the checkpoint abided by the supervisor's instructions for the checkpoint. *Id.* at 68, 592 S.E.2d at 546. While *Mitchell* provides some guidance, a proper and comprehensive analysis includes the rule set out in *Foreman*: "[T]he United States Supreme Court held that

DWI checkpoints are constitutional if vehicles are stopped according to a neutral, articulable standard (e.g., every vehicle) and if the government interest in conducting the checkpoint outweighs the degree of the intrusion." *Foreman*, 351 N.C. at 631, 527 S.E.2d at 924 (2000) (citing *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990)).[1] Based on this Court's reliance on *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990), the trial court should be guided by United States Supreme Court case law on the balancing test to be applied to checkpoints, including *Brown v. Texas*, 443 U.S. 47 (1979), and *Edmond v. City of Indianapolis*, 531 U.S. 32 (2000), as well as the two factors identified in *Mitchell*. I do not read *Mitchell* to overrule *Foreman*'s reliance on United State Supreme Court case law.

The State also correctly points out that we have not adopted the non-exclusive factors identified by *State v. Rose*, 170 N.C. App. 284, 612 S.E.2d 336 (2005), and elaborated upon by *State v. Veazey*, 191 N.C. App. 181, 662 S.E.2d 683 (2008). The *Rose/Veazey* factors may be relevant to the trial court's analysis, but I would emphasize that they are non-exclusive. *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690 (citing *Rose*, 170 N.C. App. at 295, 612 S.E.2d at 342-43).

Furthermore, the trial court's order has insufficient findings of fact and conclusions of law regarding the statutory validity of the checkpoint under N.C.G.S. § 20-16.3A (2011). Such findings and conclusions may be unnecessary, though, if

---

[1] I also acknowledge that the checkpoint at issue here is a driver's license checkpoint rather than a DWI checkpoint. Tp 15.

the trial court determines that the checkpoint is unconstitutional. Contrary to the State's argument, the General Assembly did not define the standards for the constitutionality of a checkpoint in Section 20-16.3A. The General Assembly cannot interpret the North Carolina Constitution or United States Constitution; that is a power that belongs exclusively to the judicial branch. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *Hoke v. Henderson*, 15 N.C. 1, 7-8 (1833) (discussing the supremacy of the constitution over acts of the legislature and the role of the courts), *overruled on other grounds*, *Mial v. Ellington*, 134 N.C. 131 (1903). Thus, mere compliance with Section 20-16.3A does not insulate a checkpoint from constitutional scrutiny. If the checkpoint violates the North Carolina Constitution, the United States Constitution, and/or N.C.G.S. § 20-16.3A, then the trial court should grant the motion to suppress.

It is also important to acknowledge, however, since reasonable suspicion may exist independent of the checkpoint. This was the case in *Mitchell* where we stated that the Court need not decide whether the checkpoint was constitutional because there was independent reasonable suspicion to justify the stop since the defendant disobeyed the officer's order to stop and nearly ran over the officer. 358 N.C. at 69-70, 592 S.E.2d at 547. Despite this alternative basis for affirming the trial court's order, I find this case distinguishable from *Mitchell* since there is no basis for reasonable suspicion independent of the checkpoint.

The *Mitchell* majority believed the dissent to be giving a "motorist who 'guesses' correctly that a checkpoint is not validly set up . . . *carte blanche* to ignore the checkpoint absent circumstances unrelated to the checkpoint." *Id.* at 70, 592 S.E.2d at 547. The dissenting opinion did not agree that the reasonable suspicion the majority highlighted was, in fact, independent of the checkpoint:

> Motorists do not have carte blanche to ignore checkpoints that they suspect are invalid and to avoid responsibility if they guess correctly. Police officers may certainly develop reasonable articulable suspicion to stop a car based upon their observations, *unrelated to the checkpoint*, that a crime has been committed. Armed with such suspicion, the officers' seizure of the vehicle is proper regardless of the constitutionality of the checkpoint.

*Id.* at 71, 592 S.E.2d at 548 (Brady, J., dissenting) (emphasis added).

Here, the majority's holding would give police officers *carte blanche* to set up illegal checkpoints and stop motorists for no other reason than that they simply turned around. This ability is precisely the sort of unchecked power that the Fourth Amendment seeks to prevent.

As the dissenting justices noted in *Mitchell*, Trooper Casner lacked reasonable suspicion independent of the checkpoint. Unlike *Mitchell*, Trooper Casner did not identify a moving violation or other violation of law from observing defendant's turn. Tp 25. Had Trooper Casner been stationed along the highway to check for speeding or other traffic violations, he could not have stopped defendant based solely on his legal turn. Trooper Casner was suspicious only because there

was a checkpoint. As discussed above, I believe the constitutionality of the checkpoint must be decided.

Additionally, I disagree with the majority's comparison of this case to *Foreman* and *United States v. Smith*, 396 F.3d 579 (2004). Defendant's behavior in the instant case differs from *Foreman* and *Smith*. It was evident in *Foreman* that, in addition to a legal left turn, the defendant deliberately eluded the pursuing trooper on the streets adjacent to the checkpoint and attempted to hide in a residential driveway at 2:00 a.m., giving rise to reasonable suspicion. 351 N.C. at 629, 527 S.E.2d at 922-23; *see also id.* at 633, 527 S.E.2d at 925 (Frye, J., concurring) (stating that "there was more than the left turn which justified the seizure"). The defendant in *Smith* slammed on his brakes at 3:05 a.m., "turn[ed] suddenly into a private gravel driveway," stopped, and then proceeded a bit farther down the driveway even after the officer activated his lights. 396 F.3d at 581, 585-86. The Fourth Circuit described Smith's behavior as "erratic" and "evasive." *Id.* at 585-87. The totality of the circumstances supported the district court's finding that the traffic stop was justified by reasonable suspicion. *Id.* at 586-87.

In contrast to *Foreman* and *Smith*, the trial court's order contains no findings that defendant was driving erratically, slammed on his brakes, or attempted to hide. Defendant was, in fact, not driving erratically, as Trooper Casner testified that defendant's turn was legal. Tp 25. The trial court found that Trooper Casner

described defendant's driving as "a furtive attempt to avoid the checkpoint," but the order is devoid of facts that support this conclusion.

The time of night at which defendant was stopped also distinguishes the instant case from *Foreman* and *Smith*. An "unusual hour" is one factor in determining whether an officer had reasonable suspicion. *See State v. Rinck*, 303 N.C. 551, 560, 280 S.E.2d 912, 920 (1981). Our courts have used the "unusual hour" in examining reasonable suspicion when there are no businesses open nearby, *see, e.g.*, *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (finding reasonable suspicion when officer observed activity at 3:00 a.m. in a rural area when nearby businesses were closed); when the defendant is weaving in his lane near bars, *see, e.g.*, *State v. Jacobs*, 162 N.C. App. 251, 255, 590 S.E.2d 437, 441 (2004) ("Officer Smith's observation of defendant's weaving within his lane for three-quarters of a mile at 1:43 a.m. in an area near bars was sufficient to establish a reasonable suspicion of impaired driving."); and when there are recent reports of illegal activity in the area, *see, e.g.*, *State v. Fox*, 58 N.C. App. 692, 692, 694-95, 294 S.E.2d 410, 411-12 (1982) (holding that an officer had reasonable suspicion when he observed the defendant at 12:50 a.m. in a high crime area when nearby businesses were closed), *aff'd*, 307 N.C. 460, 298 S.E.2d 388 (1983); *State v. Tillett*, 50 N.C. App. 520, 523-24, 274 S.E.2d 361, 363-64 (1981) (holding that an officer had reasonable suspicion based on activity at 9:40 p.m. in a seasonally unoccupied area where there had been recent reports of illegal hunting activity). Our courts have

held that an officer lacked reasonable suspicion when only the hour is late and there are no other suspicious circumstances, such as the ones listed above. *See, e.g., State v. Chlopek*, 209 N.C. App. 358, 364, 704 S.E.2d 563, 567 (2011) (reversing and remanding where the officer had only a "hunch" based on the time of night—12:50 a.m.—and had not received reports of copper thefts in the neighborhood); *State v. Murray*, 192 N.C. App. 684, 685, 666 S.E.2d 205, 206 (2008) (reversing and remanding where the officer "decided to go ahead and do an investigatory traffic stop" when "the vehicle was not violating any traffic laws, was not trespassing, speeding, or making any erratic movements, and was on a public street" at 3:41 a.m.).

Here, defendant was stopped at 9 p.m. Rp 7. Though 9 p.m. is close in time to 9:40 p.m., which the *Tillett* court found suspicious, this case is distinguishable from *Tillett* in that here there were no reports of illegal activity in the area. There is also no indication in the trial court's order or the testimony that this was a high crime area, differentiating the instant case from *Fox*. To the contrary, Trooper Casner testified that there was no particular reason this area of Pamlico County was selected for the checkpoint. Tp 20. This case is also distinguishable from *Watkins* and *Fox* based on Trooper Casner's description of the area as "residential and open country" with perhaps one convenience store in the area. Tp 7. There were multiple closed businesses in the area in *Watkins* and *Fox*, in contrast to the lone convenience store that Trooper Casner thought might be in the area. We do

not know whether this convenience store, if it is in the area at all, was open or closed for business at 9 p.m. Finally, defendant was not weaving in his lane in an area near bars, unlike the defendant in *Jacobs*.

The majority asserts that defendant's legal turn was "more suspicious" than the defendant's turn in *Foreman* and the defendant's turn in *Smith*, but the majority fails to point to evidence in the record to support this assertion. Giving chase through a residential neighborhood (as in *Foreman*), abruptly stopping (as in *Smith*), and attempting to use a private driveway to hide from police at an unusual hour (as in *Foreman* and *Smith*) is more suspicious than a legal turn that defendant could not even complete before being stopped by Trooper Casner. Though defendant used the shoulder of the road, Trooper Casner did not testify that using the shoulder was illegal or raised his suspicions. In all, there is no evidence to support the trial court's conclusion that the stop was justified by reasonable suspicion independent of the checkpoint.

In summary, I would remand this case to the trial court to make sufficient findings of fact and appropriate conclusions of law regarding the constitutional and statutory validity of the checkpoint. If the trial court were to conclude that the checkpoint was both constitutionally and statutorily valid, then the trial court may use the existence of the checkpoint as part of the "time, place, and manner" analysis to determine whether Trooper Casner possessed reasonable suspicion to stop defendant. *Foreman*, 351 N.C. at 631, 527 S.E.2d at 923. If the trial court were to

conclude that the checkpoint was either constitutionally invalid or statutorily invalid, then the trial court should grant defendant's motion to suppress, as there are no facts supporting a finding of reasonable suspicion independent of the checkpoint.