STATE OF NORTH CAROLINA v. BRANDON JASON BROWN

No. COA11-709

(Filed 20 December 2011)

**1. Appeal and Error—writ of certiorari—mootness—right to appeal denial of motion to suppress—notice—specificity**

Defendant preserved his right to appeal a motion to suppress in a driving while impaired case, and thus, the Court of Appeals dismissed his petition for writ of *certiorari* as moot. While it would have been easiest if defendant had stated in the transcript of plea that he was reserving his right to appeal the court's denial of his motion to suppress under N.C.G.S. 15A-979(b), defendant's notice was sufficiently specific to avoid waiver of appellate review.

**2. Search and Seizure—motion to suppress evidence—impairment—fruit of illegal Terry stop—reasonable articulable suspicion**

The trial court erred in a driving while impaired case by denying defendant's motion to suppress evidence of his alleged impairment because the evidence was the fruit of an illegal stop. The officer's reasoning for pulling over defendant's vehicle did not amount to the reasonable, articulable suspicion necessary to warrant a *Terry* stop.

Appeal by defendant from judgment entered 27 January 2011 by Judge James U. Downs in Henderson County Superior Court. Heard in the Court of Appeals 10 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for the State.*

*William B. Gibson for defendant appellant.*

McCULLOUGH, Judge.

Brandon Jason Brown ("defendant") appeals from the denial of his motion to suppress evidence of his alleged impairment. For the reasons discussed herein, we agree with defendant and reverse.

## I. Background

On the night of 6 November 2009, around 9:00 or 10:00 p.m., two black males entered a Dollar General Store located on Highway 64 East in Henderson County, fired shots, robbed the store, and fled on foot. In response to the armed robbery, Sergeant Lowell Griffin ("Sgt. Griffin") of the Henderson County Sheriff's Department continued to survey the Edneyville area surrounding the Dollar General in search of the two suspects. Around 2:00 a.m. the same night, after searching for almost four hours, Sgt. Griffin backed his cruiser into "T.J. Trail," a rural road intersecting with Highway 64 not far from the Dollar General.

Soon thereafter, Sgt. Griffin noticed lights of an oncoming vehicle coming down Highway 64. The vehicle came to a stop on the side of Highway 64 near a wooded area between the Dollar General and Sgt. Griffin on T.J. Trail. Sgt. Griffin rolled his window down and heard yelling and a car door slam. He then observed the car "accelerate rapidly" past him. Sgt. Griffin decided to follow the vehicle under the suspicion that the suspects could be in the car. After following the vehicle for over a mile, Sgt. Griffin activated his blue lights and pulled the vehicle over.

Sgt. Griffin called for backup and then approached the driver's side of the car. As soon as he reached the back of the car he could tell that the occupants were Caucasian. Upon reaching the driver's side window, he also immediately "smelled the odor of alcohol from within the vehicle" and asked defendant, who was driving, to exit the car. Sgt. Griffin and Deputy Terry Patterson had defendant separately blow into two Alco-sensors, which both showed a positive indication for alcohol. They subsequently placed defendant under arrest.

Defendant filed a Notice of Intention to Move to Suppress the stop on 17 June 2010. He filed a motion to suppress on 11 October 2010 and the case was tried later the same day before the Honorable

Mack Brittain in Henderson County District Court. The trial court denied the motion and defendant pled guilty. The trial court imposed a 60-day suspended sentence under Level V. Defendant appealed the denial of his motion to suppress to superior court.

On 14 January 2011 in superior court, defendant filed a pretrial motion to suppress the stop and any fruits thereof as unconstitutional. The trial court held a pretrial hearing on 24 January 2011, regarding the motion in which Sgt. Griffin stated, "my thought process at that point was that the vehicle was possibly picking up robbery suspects, and I wanted to investigate the vehicle for that reason." Sgt. Griffin did not have a tag number or vehicle description for a getaway car for the robbery suspects. Sgt. Griffin also testified in the pretrial hearing that he was not investigating the vehicle for "a Chapter 20 violation" at the time, but once defendant exited the car he ruled him out as a robbery suspect and the investigation turned to defendant "for suspicion of driving while impaired." The trial court denied defendant's motion to suppress and the case came to trial on 27 January 2011.

At trial, the State presented evidence and upon completion of the State's evidence, defendant made a motion to dismiss which the trial court denied with defendant's exception noted. Defendant renewed his motion to suppress, which the trial court denied. Defendant subsequently withdrew his plea of not guilty and entered a plea of guilty. At this point defense counsel stated that he "would ask the Court to allow me to say to the record that [defendant] would like to preserve any appellate issues that may stem from the motions in this trial." The trial court answered by stating, "All right, let me do some findings in this last one[,]" referring to the renewed motion to suppress. The trial court proceeded to orally enter findings of fact regarding its denial of defendant's renewed motion to suppress and then questioned defendant pursuant to a Transcript of Plea. Defendant provided a factual basis for the plea and the trial court again imposed a 60-day suspended sentence under Level V. Defendant gave oral notice of appeal in open court.

## II. Analysis

**[1]** Defendant raises a single issue on appeal of whether or not the trial court erred in denying his motion to suppress evidence of his alleged impairment based on the grounds that the evidence was obtained as a result of an illegal stop and subsequent arrest in violation of his rights to be free from unreasonable searches and seizures

guaranteed by the Fourth and Fourteenth Amendments to the United States and North Carolina Constitutions. However, we must first address the preliminary matter of whether defendant preserved his right to appeal the issue and in the alternative whether we should grant his Petition for Writ of Certiorari. We believe defendant did preserve his right to appeal and consequently dismiss his Petition for Writ of Certiorari as moot.

The State contends that defendant did not preserve the issue regarding his motion to suppress because pursuant to N.C. Gen. Stat. § 15A-979(b) (2009), a defendant must give notice of his intent to appeal the motion to suppress to the trial court and prosecution prior to the finalization of plea negotiations. *See State v. Reynolds*, 298 N.C. 380, 397, 259 S.E.2d 843, 853 (1979). If a defendant does not give specific notice of his intent to appeal a motion to suppress, then the defendant has waived the right to appellate review. *State v. Brown*, 142 N.C. App. 491, 493, 543 S.E.2d 192, 193 (2001). The State argues the language used by trial counsel in preserving defendant's right to appeal the motion to suppress was not specific enough to put the trial court and prosecution on notice.

In *State v. Pimental*, 153 N.C. App. 69, 75, 568 S.E.2d 867, 871 (2002), our Court held that the defendant did not preserve his right to appeal a motion to suppress after giving a guilty plea where the defendant stated that he wished to "preserve[] his right to appeal any and all issues which are so appealable pursuant to North Carolina statutory law and North Carolina case law and pursuant to this plea agreement." On the other hand, in the case at bar, defense counsel made the statement "that [defendant] would like to preserve any appellate issues that may stem from the motions in this trial," immediately following an attempt to make a renewed motion to suppress at the end of the State's evidence. Defendant had only made five motions throughout the trial and two of them were motions to suppress in regard to the stop. The other motions were: (1) a motion to suppress with respect to the arrest, which was never addressed; (2) a motion to dismiss at the end of the State's evidence, which in most trials is a formality; and (3) a quasi-motion for mistrial along with the renewed motion to suppress. Following defense counsel's request to preserve his right to appeal any issues from the motions, the trial court reentered substantially similar facts as he did when he initially denied defendant's pretrial motion to suppress. Clearly, the trial court understood which motion defendant intended to appeal and decided to make its findings of fact as clear as possible for the record.

The State also contends that defendant's renewed motion to suppress during trial was improper because a motion to suppress may not be renewed during trial unless "additional pertinent facts have been discovered." N.C. Gen. Stat. § 15A-975(c) (2009). Consequently, the State argues defendant may not appeal the renewed motion because no new facts were discovered during the trial. While we agree with the State on that specific point, we do not believe it has an impact on defendant's appeal. The only issue is whether defendant's preservation of his right to appeal was with sufficient specificity, and we believe that it was.

As briefly discussed above, the State attempts to rely on our Court's decision in *Pimental* where we held that the defendant did not give notice of his intent to appeal the denial of his motion to suppress with sufficient specificity. *See Pimental*, 153 N.C. App. 69, 568 S.E.2d 867. However, our case can be distinguished from *Pimental*. One difference is that in *Pimental*, the defendant gave the purported notice in the Transcript of Plea, while in our case defendant gave notice to the trial court and prosecution prior to the finalization of plea negotiations. *Id.* at 75-76, 568 S.E.2d at 871. *See also Reynolds*, 298 N.C. at 396-97, 259 S.E.2d at 853 (where our Supreme Court found a lack of specificity in the defendant's notice because the suppression and sentencing hearings were before separate judges and the sentencing judge noted that he "did not anticipate such an appeal").

Even further, in *Pimental* the defendant failed to object on numerous occasions to the trial court's denial of his motion to suppress. The record did not contain any written rulings or findings of fact relating to the trial court's denial of the defendant's motions, while in the case at hand, defendant objected to each denial of his motion to suppress, and the trial court entered similar findings regarding the denial on two occasions. *Pimental*, 153 N.C. at 75-76, 568 S.E.2d at 871. While we do note, as in *Pimental*, that it would have been easiest if defendant stated in the Transcript of Plea that he was " 'reserving his right to appeal the Court's denial of his motions to suppress pursuant to N.C.G.S. § 15A-979(b),' " we do not believe defendant's notice lacked specificity to warrant a waiver of appellate review. The trial court clearly understood defendant intended to appeal the denial of his motion to suppress as it reentered findings of fact regarding the motion, albeit based on an improper renewed motion. Defendant had already appealed his motion to suppress from the district court to superior court. Defense counsel also made defendant's intention to appeal clear by entering his notice concurrently

with the changing of defendant's plea from not guilty to guilty. *See State v. McBride*, 120 N.C. App. 623, 625, 463 S.E.2d 403, 404 (1995) (defendant must notify the State and trial court prior to pleading guilty). We believe defendant's concurrent notice satisfied the holding of *McBride. Id.* Even more, the lack of motions for defendant to appeal, the objection to the motion to suppress, and the amount of discussion spent on the motion to suppress also made it clear as to which motion defendant intended to appeal. Therefore, defendant gave sufficient notice of his intent to appeal the denial of his motion to suppress to maintain his right to appellate review, and we must now address his sole issue on appeal.

**[2]** Defendant argues the trial court erred in denying his motion to suppress evidence of his alleged impairment because the evidence was the fruit of an illegal stop. We agree.

In reviewing the denial of a motion to suppress our Court

> "is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law." *In re Pittman*, 149 N.C. App. 756, 762, 561 S.E.2d 560, 565 (citation omitted), *disc. review denied*, 356 N.C. 163, 568 S.E.2d 608 (2002), *cert. denied*, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). "[I]f so, the trial court's conclusions of law are binding on appeal." *State v. West*, 119 N.C. App. 562, 565, 459 S.E.2d 55, 57, *disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995). "If there is a conflict between the [S]tate's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982).

*State v. Veazey*, 201 N.C. App. 398, 400, 689 S.E.2d 530, 532 (2009), *disc. review denied*, 363 N.C. 811, 692 S.E.2d 876 (2010). "[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997). We review the trial court's conclusions of law *de novo. State v. Johnson,* ___ N.C. App. ___, ___, 693 S.E.2d 711, 714 (2010).

Defendant contends Sgt. Griffin lacked the reasonable suspicion necessary to justify a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968).

> In *Terry*, [the United States Supreme Court] held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry, supra*, at 30. While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity. *Terry, supra*, at 27.

*Illinois v. Wardlow*, 528 U.S. 119, 123-24, 145 L. Ed. 2d 570 (2000). "The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). We "must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *Id.* (quoting *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).

In the present case, Sgt. Griffin testified that defendant pulled off to the side of Highway 64 in a wooded area and Sgt. Griffin subsequently heard some yelling and car doors slamming. Defendant, after a short amount of time, accelerated rapidly past Sgt. Griffin, but not to a speed warranting a traffic violation. However, Sgt. Griffin thought defendant may have been picking up the robbery suspects, so he decided to investigate. After following defendant for almost a mile without any traffic violations, Sgt. Griffin decided to pull over defendant based on his suspicion that the vehicle may have contained the robbery suspects. Sgt. Griffin did not have any information regarding what direction the suspects fled the Dollar General, nor did he have a description of a getaway vehicle. Defendant argues this did not amount to reasonable suspicion because armed robbers would not be hiding in the woods near the scene four hours after the crime and then proceed to yell and slam car doors while attempting to remain unnoticed.

Defendant cites to a few of our Court's recent decisions in arguing that Sgt. Griffin's beliefs did not amount to reasonable suspicion. In *State v. Choplek*, ___ N.C. App. ___, 704 S.E.2d 563 (2011), our Court recently held that a deputy's stop was based on an " 'unparticularized suspicion or hunch' " and not the requisite reasonable suspi-

cion where there were no traffic violations. *Id.* at ___, 704 S.E.2d at 566 (citation omitted). The deputy only stopped the defendant because he was driving a work truck late at night in a partially developed subdivision during a time when numerous copper thefts had been reported in the county. Defendant also cites to *State v. Murray*, 192 N.C. App. 684, 666 S.E.2d 205 (2008), where we held that the stop of a vehicle in an area where break-ins of businesses had occurred did not reach the level of necessary reasonable suspicion, but was only based on the officer's " 'unparticularized suspicion or hunch.' " *Id.* at 687, 666 S.E.2d at 208 (citation omitted). In that case the businesses were closed, there were no residences in the area, and it was in the early hours of the morning. *Id.* at 689, 666 S.E.2d at 208.

On the other hand, the State argues we should view the totality of the circumstances and any "rational inferences which the officers were entitled to draw from [the] facts" of the situation. *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979). The State would have us rely on our decision in *State v. Covington*, 138 N.C. App. 688, 532 S.E.2d 221 (2000). However, in *Covington*, the facts tend to show that following a break-in, officers received a report that the suspects had left the scene of the crime heading in a particular direction on a particular street, so the officers set up a stop point three hundred yards from the scene on the specific street given. *Id.* at 689-90, 532 S.E.2d at 222. The facts of *Covington* are distinguishable because the officers had an idea of which direction the suspects fled, while in the case at hand, the only information was that the suspects fled on foot. The State also attempts to rely on *State v. Thompson*, but that case can also be distinguished because there the officers relied on reports that a van had been used during break-ins in the area and they witnessed suspicious activity involving a van in the same area. *Thompson*, 296 N.C. at 707, 252 S.E.2d at 779. If we were to decide in the State's favor, we could potentially set a precedent allowing law enforcement to pull over any citizen driving without exhibiting any traffic violations in the vicinity of a break-in or robbery with the most minimal suspicion of involvement in the crime. We are reluctant to allow such unfettered discretion and must consequently agree with defendant's argument that Sgt. Griffin's reasoning for pulling over defendant's vehicle did not amount to the reasonable, articulable suspicion necessary to warrant a *Terry* stop.

## III. Conclusion

As a result, we must reverse the decision of the trial court in denying defendant's motion to suppress the evidence of his impair-

ment due to Sgt. Griffin's lack of reasonable, articulable suspicion. Sgt. Griffin's reasoning must be based on more than an " 'unparticularized suspicion or hunch.' " *See Choplek*, ___ N.C. App. at ___, 704 S.E.2d at 566 (citation omitted).

Reversed.

Judges HUNTER, JR., and THIGPEN concur.