*618
 
 BRYANT, Judge.
 

 *319
 
 Where the trial court's findings of fact do not support its conclusion that defendant was legally seized at the time he consented to a search of his person, we reverse the trial court order denying defendant's motion to suppress the contraband found on his person and remand so that the judgment against him can be vacated.
 

 On 21 April 2014, defendant Byron Jerome Parker was indicted for possession of cocaine. On 29 June 2016, defendant moved to suppress any evidence obtained as a result of an unlawful search and seizure. The matter came on for a hearing on 7 July 2016 in Guilford County Superior Court, the Honorable Susan Bray, Judge presiding.
 

 *320
 
 The evidence admitted during the hearing tended to show that on 29 January 2014, Greensboro Police Department Officers Matthew Sletten and Travis Cole were conducting surveillance "on a known drug house" located at 7 Pipers Glen Court in Greensboro based on complaints of drug activity, drug use, and prostitution. In the previous month, heroin had been found at the house and four individuals were arrested. At approximately 4:25 p.m., the officers noted a man, defendant, leave the residence in a blue truck and then return twenty minutes later. Defendant parked his truck in the driveway of 7 Pipers Glen Court, exited his vehicle, and walked toward a woman salting the driveway of a nearby residence. Officer Sletten observed defendant and the woman yelling at each other, with defendant asking, "Why are you taking pictures of me?" Believing that the confrontation was going to escalate into a physical altercation, the officers exited their surveillance vehicle and separated defendant and the woman. Officer Sletten spoke with defendant, asked for his identification, and checked his record, verifying that defendant had no pending warrants. Officer Sletten then asked defendant if he had any narcotics on him. Defendant responded that he did not. At Officer Sletten's request, defendant consented to a search of his person and his vehicle. Pursuant to the search, Officer Sletten discovered "small off-white rocks" in defendant's pants pocket. He arrested defendant for possession of cocaine.
 

 At the hearing on the motion to suppress, Officer Sletten testified that after defendant provided his driver's license and it was determined he had no outstanding warrants, Officer Sletten continued to talk with defendant but did not immediately return his driver's license. Prior to the discovery of the off-white rocks, defendant was not under arrest. A video of the incident taken from the vantage of Officer Cole's body camera was also admitted into evidence. Officer Sletten testified that from the moment he exited his vehicle and searched defendant, ten minutes transpired. At the close of the evidence, defendant again moved to suppress evidence obtained as a result of the search. Defendant argued that he was seized and unlawfully detained when Officer Sletten requested defendant's identification and did not return it, but instead asked for consent to search. After hearing the evidence and the arguments of counsel, the trial court orally denied defendant's motion to suppress and on 18 July entered a written order to that effect.
 

 Preserving his right to appeal the order denying his motion to suppress, defendant entered a guilty plea to the charge of felony possession of cocaine. Defendant was sentenced to an active term of 8 to 19 months. The sentence was suspended, and defendant was placed on supervised
 
 *321
 
 probation for a term of 18 months. Defendant appeals the order denying his motion to suppress.
 

 On appeal, defendant argues that the trial court erred by denying his motion to suppress. Defendant contends that his stop was unconstitutional and that in its order denying his motion to suppress, the trial court committed reversible error by making unsupported findings of fact and conclusions of law. We agree.
 

 In reviewing the denial of a motion to suppress our Court
 

 is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law. If so, the trial court's conclusions of law are binding on appeal. If there is a conflict between the
 
 *619
 
 State's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal.
 

 State v. Veazey
 
 ,
 
 201 N.C. App. 398
 
 , 400,
 
 689 S.E.2d 530
 
 , 532 (2009),
 
 disc. review denied
 
 ,
 
 363 N.C. 811
 
 ,
 
 692 S.E.2d 876
 
 (2010). The trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found. We review the trial court's conclusions of law
 
 de novo
 
 .
 

 State v. Brown
 
 ,
 
 217 N.C. App. 566
 
 , 571,
 
 720 S.E.2d 446
 
 , 450 (2011) (citations omitted).
 

 In its order denying defendant's motion to suppress, the trial court made the following findings of fact and conclusion of law:
 

 1. On January 29, 2104 [sic], Greensboro Police Officers ML Sletten and Travis Cole were conducting surveillance of a known drug house at 7 Pipers Glen Court.
 

 2. There had been numerous complaints from a neighbor about drug use, drug activity and prostitution at 7 Pipers Glen. The GPD had previously conducted a search of the property with consent of the owner and located heroin and [drug] paraphernalia. That search,
 
 *322
 
 about a month prior to the date in this case, resulted in 4 arrests.
 

 3. The neighbor who initiated the complaints had documented activity at 7 Pipers Glen by taking photographs of people coming and going from the residence, recording license tags, vehicle descriptions and the like.
 

 4. This neighbor had contacted Officer Sletten after the first search and let him know problems were ongoing, so Officers Sletten and [Cole] set up the surveillance in an undercover vehicle with tinted windows.
 

 5. Officers Sletten and [Cole] began surveillance around noon, parking at the bottom of the cul de sac. Around 4:25pm, Officer [Cole] observed Defendant Byron Jerome Parker leave the residence of 7 Pipers Glen in a blue pickup truck. He returned twenty minutes later at 4:45pm.
 

 6. When Defendant Parker returned to the residence, he backed his truck into the driveway. He got out and approached the complaining neighbor, who was salting the driveway at her own house.
 

 7. Officers Sletten and Cole saw [defendant] Parker throw his arms up and yell at the neighbor.
 

 8. Officer Sletten rolled the window down in his car and heard Defendant Parker ask neighbor why she was taking pictures of him. ...
 

 9. As Officer Sletten observed Defendant Parker and the neighbor continue to approach each other, he and Officer Cole decided to break their surveillance and deescalate the situation before it turned physical. Sletten was concerned the verbal altercation would turn into a physical fight. [Defendant] Parker and the neighbor were within 6-8 feet of each other.
 

 10. Officers Sletten and Cole exited their unmarked vehicle. Both officers were in uniform. It was daylight outside. They approached [defendant] Parker and the neighbor, [sic] separated them. Officer Cole spoke with the neighbor, and Officer Sletten talked with Defendant Parker.
 

 11. Officer Sletten told [defendant] Parker that they had received drug complaints (verified in the past) and
 
 *323
 
 located narcotics at the 7 Pipers Glen address. Officer Sletten asked [defendant] Parker for his ID, ran it and checked for warrants.
 

 12. There were no outstanding warrants for Defendant Parker.
 

 13. Officer Sletten asked [defendant] Parker if he had any narcotics on him or in his vehicle and asked for consent to search both. [Defendant] Parker gave consent.
 

 14. Officer Sletten located small off-white rocks of what appeared to be cocaine in Parker's pants pocket and arrested him for possession of cocaine.
 

 15. Officer Sletten kept [defendant] Parker's ID from [the] time he asked for it until he arrested him for possession of cocaine.
 

 *620
 
 Officers Sletten and Cole were in the course of investigating and deescalating a potential altercation between Defendant Parker and the Pipers Glen neighbor. In viewing the totality of the circumstances, it was entirely appropriate for Officers Sletten and Cole to separate the two, check [defendant] Parker's ID and ask for consent to search. ...
 

 The Court concludes, then, as a matter of law, that there was no illegal seizure, no fruits of a poisonous tree, and that the Motion to Suppress should be denied.
 

 On appeal, defendant specifically challenges finding of fact 10 and the trial court's conclusory statement that "Officers Sletten and Cole were in the course of investigating and de-escalating a potential altercation between Defendant Parker and the Pipers Glen neighbor." Defendant contends that according to the video of the incident, Officer Cole exited his police vehicle and spoke with the homeowner of 7 Pipers Glen Court-the residence under surveillance-and then assisted Officer Sletten in searching defendant. Defendant further contends that the circumstance which gave rise to the officers' intervention-the altercation-quickly evaporated when the officers intervened: defendant stopped arguing and became "very compliant." Therefore, it was only after the de-escalation of the conflict between defendant and the neighbor that Officer Sletten obtained defendant's identification, determined that defendant had no outstanding warrants, and asked defendant for consent to search. Defendant argues that "[Officer] Sletten did not have reasonable suspicion to detain [defendant] at any point, but certainly
 
 *324
 
 not beyond the point where concern regarding a potential altercation had evaporated[.] [Defendant]'s consent to search was obtained during an unlawful seizure."
 

 We note that Officer Sletten testified during the suppression hearing that "[w]e intervened to prevent a fight. We approached the two, separated them. My partner talked to the main complainant while I talked to [defendant]." Therefore, there is evidence to support the trial court's finding of fact number 10.
 
 See
 

 Brown
 
 ,
 
 217 N.C. App. at 571
 
 ,
 
 720 S.E.2d at 450
 
 . Furthermore, even presuming defendant's assertion is true-that Officer Cole spoke to the homeowner of 7 Pipers Glen Court, the residence under surveillance, rather than the neighbor who was arguing with defendant-the conflict is immaterial, as there is no dispute that Officer Sletten separated defendant from the neighbor in order to de-escalate the argument. And whether Officer Cole held a conversation with the neighbor is irrelevant to the determination of whether defendant was seized illegally.
 

 Defendant's main argument appears to be that when Officer Sletten failed to return defendant's identification after finding no outstanding warrants and after the initial reason for the detention was satisfied, he instead requested defendant's consent to search, the seizure was unlawful, and defendant's consent was not voluntarily given. We agree.
 

 "[A] municipal law enforcement officer acting within his territorial jurisdiction is considered a peace officer who possesses 'all of the powers invested in law enforcement officers by statute or common law.' "
 
 State v. Gaines
 
 ,
 
 332 N.C. 461
 
 , 472,
 
 421 S.E.2d 569
 
 , 574 (1992) (quoting N.C. Gen. Stat. § 160A-285 (1987) ).
 

 Our United States Supreme Court has held that law enforcement officers do not violate the Fourth Amendment's prohibition against unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when police officers have no reason to suspect that a person is engaged in criminal behavior, they may "pose questions, ask for identification, and request consent to search ... provided they do not induce cooperation by coercive means."
 

 State v. Isenhour
 
 ,
 
 194 N.C. App. 539
 
 , 542,
 
 670 S.E.2d 264
 
 , 267 (2008) (alteration in original) (citations omitted) (quoting
 
 United States v. Drayton
 
 ,
 
 536 U.S. 194
 
 , 201,
 
 122 S.Ct. 2105
 
 , 2111,
 
 153 L.Ed.2d 242
 
 , 251 (2002) ). "Once the original purpose of the stop has been addressed, there must be grounds
 
 *325
 
 which provide a reasonable and articulable suspicion in order to justify further delay."
 
 *621
 

 State v. Falana
 
 ,
 
 129 N.C. App. 813
 
 , 816,
 
 501 S.E.2d 358
 
 , 360 (1998) (citing
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 ,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968) ). "In determining whether the further detention was reasonable, the court must consider the totality of the circumstances."
 
 State v. Hernandez
 
 ,
 
 170 N.C. App. 299
 
 , 308,
 
 612 S.E.2d 420
 
 , 426 (2005) (citation omitted).
 

 In
 
 State v. Myles
 
 , a divided panel of this Court held that the defendant's consent to search his vehicle was given involuntarily where it was obtained during an "improper" detention.
 
 188 N.C. App. 42
 
 , 51,
 
 654 S.E.2d 752
 
 , 758,
 
 aff'd per curiam
 
 ,
 
 362 N.C. 344
 
 ,
 
 661 S.E.2d 732
 
 (2008). As a result, the trial court's order denying the defendant's motion to suppress contraband discovered during the search was reversed, and the defendant's conviction vacated.
 
 Id.
 
 at 51-52,
 
 654 S.E.2d at 758
 
 . The matter evolved during a traffic stop by a law enforcement officer who observed a vehicle weaving within its lane.
 
 Id.
 
 at 43,
 
 654 S.E.2d at 753
 
 . At the beginning of the stop, the law enforcement officer identified himself to the driver and passenger (the defendant), identified the reason for the stop, asked for the driver's identification and vehicle registration, and learned that the vehicle was a rental.
 

 Id.
 

 The officer issued a warning but then asked the driver to step out of the vehicle and accompany the law enforcement officer to his patrol vehicle, where the officer would write a warning ticket.
 

 Id.
 

 Before they reached the officer's patrol vehicle, the officer frisked the driver but did not find any weapons or contraband.
 

 Id.
 

 The officer also did not detect the odor of alcohol.
 

 Id.
 

 However, the driver's heartbeat was unusually fast and he began "sweating profusely," despite the cool temperature.
 
 Id.
 
 at 43-44,
 
 654 S.E.2d at 753-54
 
 . Once in the patrol vehicle, the officer asked the driver about his travel plans. The officer then exited the vehicle in order to speak with the driver's passenger-the defendant-who was still seated in the rental car.
 
 Id.
 
 at 43,
 
 654 S.E.2d at 754
 
 . After listening to the defendant answer similar questions about travel plans, the officer stated that he was suspicious of their stories and called a K-9 unit for assistance.
 
 Id.
 
 at 44,
 
 654 S.E.2d at 754
 
 . The defendant, who had rented the vehicle, gave the K-9 officers permission to search the vehicle; marijuana was discovered in the trunk.
 
 Id.
 
 at 44,
 
 654 S.E.2d at 754
 
 . The defendant was charged with trafficking in marijuana.
 

 Id.
 

 In a pretrial motion, the defendant moved to suppress the evidence, but his motion was denied. He then entered a guilty plea, preserving his right to appeal the suppression order. On appeal, this Court noted that during the suppression hearing the law enforcement officer testified that after issuing the warning ticket, he "considered the traffic stop
 
 *326
 
 'completed' because he had 'completed all [of his] enforcement action of the traffic stop.' "
 
 Id.
 
 at 45,
 
 654 S.E.2d at 755
 
 . However, the driver "was not free to leave because [the officer] felt 'there was more to the traffic stop than just failure to maintain a lane.' "
 
 Id.
 
 at 46,
 
 654 S.E.2d at 755
 
 . This Court reasoned that "in order to justify [the law enforcement officer]'s further detention of [the] defendant, [the officer] must have had [the] defendant's consent or 'grounds which provide a reasonable and articulable suspicion in order to justify further delay'
 
 before
 
 he questioned [the] defendant."
 
 Id.
 
 at 45,
 
 654 S.E.2d at
 
 755 (citing
 
 Falana
 
 ,
 
 129 N.C. App. at 816
 
 ,
 
 501 S.E.2d at
 
 360 ). Upon review, a majority of this Court held that the record provided insufficient evidence to support a reasonable suspicion warranting the defendant's continued detention after the warning ticket was issued.
 

 In order for [the law enforcement officer] to lawfully detain [the] defendant, [the officer]'s suspicion must be based solely on information obtained during the lawful detention of [the driver] up to the point that the purpose of the stop has been fulfilled. ... Since [the officer]'s continued detention of [the] defendant was unconstitutional, [the] defendant's consent to the search of his car was involuntary.
 

 Id.
 
 at 51,
 
 654 S.E.2d at
 
 758 (citing
 
 State v. McClendon
 
 ,
 
 350 N.C. 630
 
 , 636,
 
 517 S.E.2d 128
 
 , 134 (1999) ;
 
 State v. Kincaid
 
 ,
 
 147 N.C. App. 94
 
 , 94,
 
 555 S.E.2d 294
 
 , 294 (2001) );
 
 see also
 

 State v. Pearson
 
 ,
 
 348 N.C. 272
 
 ,
 
 498 S.E.2d 599
 
 (1998) (holding the defendant's nervousness along with inconsistent statements made by the defendant and the vehicle passenger did not give rise to a reasonable suspicion of criminal activity). This Court
 
 *622
 
 reversed the trial court order denying the defendant's motion to suppress contraband discovered during the search of his vehicle and vacated his conviction.
 
 Id.
 
 at 51-52,
 
 654 S.E.2d at 758
 
 .
 

 Although the instant case does not involve a traffic stop, the reasoning in
 
 Myles
 
 and cases discussed herein are applicable where, as here, the initial reason for the stop or detention has been satisfied but law enforcement prolongs the detention. In
 
 Kincaid
 
 , this Court quoted
 
 United States v. Elliott
 
 ,
 
 107 F.3d 810
 
 (10th Cir. 1997), for the proposition "that ... federal courts 'have consistently concluded that an officer must return a driver's documentation before a detention can end.' "
 
 Kincaid
 
 ,
 
 147 N.C. App. at 99
 
 ,
 
 555 S.E.2d at 298
 
 (quoting
 
 Elliott
 
 ,
 
 107 F.3d at
 
 814 );
 
 see also
 

 State v. Jackson
 
 ,
 
 199 N.C. App. 236
 
 , 243,
 
 681 S.E.2d 492
 
 , 497 (2009) ("Generally, an initial traffic stop concludes and the encounter becomes consensual only after an officer returns the detainee's driver's
 
 *327
 
 license and registration."). The
 
 Kincaid
 
 Court also found guidance in
 
 State v. Morocco
 
 ,
 
 99 N.C. App. 421
 
 ,
 
 393 S.E.2d 545
 
 (1990), in which the encounter under review was deemed consensual where the law enforcement officer completed the citation and relinquished the defendant's license before requesting permission to search.
 
 Kincaid
 
 ,
 
 147 N.C. App. at 99-100
 
 ,
 
 555 S.E.2d at 299
 
 (discussing
 
 Morocco
 
 ,
 
 99 N.C. App. 421
 
 ,
 
 393 S.E.2d 545
 
 ).
 

 Here, the trial court found that Officers Sletten and Cole exited their police vehicle when they observed an escalating altercation between defendant and a neighbor of the residence under surveillance. The officers separated the two. Officer Sletten asked defendant for his identification, "ran it[,] and checked for warrants." After de-escalating the potential altercation and finding no outstanding warrants, Officer Sletten failed to return defendant's identification before pursuing an inquiry into defendant's possession of narcotics. In its order, the trial court noted that, based on the totality of the circumstances, it was "entirely appropriate for [the] officers [ ] to separate the two, check [defendant's] ... ID and ask for consent to search," and concluded defendant's seizure was thus not illegal.
 

 Interestingly, the trial court's findings of fact make clear the officers were in the vicinity due to complaints about a "drug house," but the encounter between defendant and law enforcement began distinctly as a result of a potential altercation between defendant and a neighbor. The trial court's order fails to provide findings of fact which would give rise to a reasonable, articulable suspicion that defendant was otherwise subject to detention. Absent a reasonable and articulable suspicion to justify further delay,
 
 [1]
 
 retaining defendant's driver's license beyond the point of satisfying the purpose of the initial detention-de-escalating the conflict, checking defendant's identification, and verifying he had no outstanding warrants-was unreasonable.
 
 See
 

 Falana
 
 ,
 
 129 N.C. App. at 816
 
 ,
 
 501 S.E.2d at 360
 
 ("Once the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further [detention]."). Thus, defendant's consent to search his person, given during the period of unreasonable detention, was not voluntary.
 
 See
 

 Myles
 
 ,
 
 188 N.C. App. at 51
 
 ,
 
 654 S.E.2d at 758
 
 . Therefore, defendant's search was conducted
 
 *328
 
 in violation of his rights under the Fourth Amendment to the United States Constitution. Accordingly, we reverse the trial court's order denying defendant's motion to suppress and remand this matter so that the judgment against him may be vacated.
 

 REVERSED AND REMANDED.
 

 Judges DAVIS and INMAN concur.
 

 [1]
 

 The trial court noted in finding of fact 15 that Officer Sletten kept defendant's identification until after defendant was arrested. However, neither the officers nor the trial court indicated that defendant's mere presence-including his leaving and returning to the drug house-gave rise to a reasonable and articulable suspicion to detain him further.