IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-533

No. COA20-763

Filed 5 October 2021

Guilford County, Nos. 16 CRS 91764, 91767; 18 CRS 67753

STATE OF NORTH CAROLINA

v.

KENNETH ANTON ROBINSON

Appeal by defendant from judgment entered 11 July 2019 by Judge Gregory R. Hayes in Guilford County Superior Court. Heard in the Court of Appeals 10 August 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Brenda Rivera, for the State.*
>
> *Richard J. Costanza for defendant-appellant.*

ARROWOOD, Judge.

¶ 1 Kenneth Anton Robinson ("defendant") appeals from judgment entered upon defendant's guilty plea to trafficking in opium by possession and possession of a firearm by a felon. We dismiss defendant's appeal and by *writ of certiorari* find no error.

I.     Background

¶ 2        On 6 February 2017, a Guilford County grand jury indicted defendant on charges of trafficking in opium by possession and possession of a firearm by a felon. Defendant was indicted with an additional charge of trafficking in opium by possession on 7 May 2018.

¶ 3        The trial court heard defendant's motion to suppress at a hearing on 8 July 2019. At the hearing, the trial court heard testimony that law enforcement officers with the Greensboro Police Department executed a search warrant at defendant's residence on 16 December 2016. The law enforcement officers were equipped with body-worn cameras and had the cameras activated prior to entering the residence. During the initial entry of the residence, a law enforcement officer conducted a walk-through of the property with their body-worn camera activated. After the walk-through, the supervising officer directed the other officers to turn off their body-worn cameras.

¶ 4        The State introduced a copy of the Greensboro Police Department's departmental directives regarding body-worn cameras. The directive requires body-worn cameras to be used during the execution of search warrants, but also allows officers to turn off their cameras if directed to do so by a supervising officer.

¶ 5        The trial court denied the motion to suppress by order entered 10 July 2019. In doing so, the trial court found that turning off the body-worn cameras was not done in bad faith and that no materially exculpatory evidence was lost; only potentially

useful evidence was lost.

¶ 6 On 9 July 2019, defendant entered guilty pleas to two charges of trafficking in opium by possession and one charge of possession of a firearm by a felon. In the factual basis, the State noted that defendant was present at the search at issue in the motion to suppress as well as a later search on 7 February 2018. During the sentencing hearing, the trial court declined defendant's invitation to make a substantial assistance deviation from the mandatory minimum sentence but did note defendant's assistance following his 16 December 2016 arrest. The trial court consolidated the charges into a single judgment and imposed an active sentence of 90 to 120 months in prison.

¶ 7 Defendant filed written notice of appeal 17 July 2019. Defendant additionally filed a petition for *writ of certiorari* on 29 December 2020.

## II.     Discussion

### A.     Appellate Jurisdiction

¶ 8 Under N.C. Gen. Stat. § 15A-979, a defendant entering notice of appeal following the denial of a motion to suppress is required to either include in the plea transcript a statement reserving the right to appeal the trial court's judgment, or to orally advise the trial court and prosecutor before the conclusion of plea negotiations that the defendant intended to appeal the trial court's judgment. *See State v. Brown*, 217 N.C. App. 566, 569, 720 S.E.2d 446, 449 (2011). Because the plea transcript is

silent as to defendant's intent to appeal the trial court's judgment, defendant has failed to preserve his appeal. Defendant's appellate counsel has filed a petition for *writ of certiorari* requesting appellate review of the trial court's judgment under Rule 21 of the North Carolina Rules of Appellate Procedure.

¶ 9 Rule 21 provides that "writ of certiorari may be issued in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21. This Court has previously granted petitions for *writ of certiorari* where, as here, "[d]efendant lost [their] right to appeal through no fault of [their] own but rather due to [their] trial counsel's failure to give proper notice of appeal." *State v. Holanek*, 242 N.C. App. 633, 640, 776 S.E.2d 225, 232 (2015). In such circumstances, the defendant's appeal is dismissed and this Court issues *writ of certiorari* to address the merits of the defendant's argument. *Id.* (citing *In re I.T.P-L.*, 194 N.C. App. 453, 460, 670 S.E.2d 282, 285 (2008)). Because defendant has lost the right to appeal without fault, we dismiss his appeal and exercise our discretion to grant defendant's petition for *writ of certiorari* and address the merits of defendant's appeal.

## B. *Anders* Brief

¶ 10 Defendant's appellate counsel could not "identify any meritorious issues that could support a meaningful argument for relief on appeal[,]" and requests this Court

review the record on appeal for any issues of merit, pursuant to *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967), and *State v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985). In order to comply with *Anders*, appellate counsel was required to file a brief referring any arguable assignments of error, as well as provide defendant with copies of the brief, record, transcript, and the State's brief. *Kinch*, 314 N.C. at 102, 331 S.E.2d at 666-67. Defendant's counsel has done so and accordingly has fully complied with *Anders* and *Kinch*. Defendant did not file a *pro se* brief with this Court.

¶ 11        Pursuant to *Anders*, this Court must conduct "a full examination of all the proceedings[,]" including a "review [of] the legal points appearing in the record, transcript, and briefs, not for the purpose of determining their merits (if any) but to determine whether they are wholly frivolous." *Kinch*, 314 N.C. at 102-103, 331 S.E.2d at 667 (citation omitted). Defendant's appellate counsel submitted the following legal points: (1) whether the indictments were sufficient to confer jurisdiction upon the trial court; (2) whether the trial court erred in denying the motion to suppress; (3) whether there was a sufficient factual basis for the plea; and (4) whether the trial court erred in sentencing defendant. We agree with defendant's appellate counsel that it is frivolous to argue these issues.

¶ 12        In this case, the indictments against defendant were legally sufficient and conferred jurisdiction upon the trial court, as they gave defendant sufficient notice of the charges against him. *See State v. Harris*, 219 N.C. App. 590, 592-93, 724 S.E.2d

633, 636 (2012).

¶ 13       There was competent evidence to support the trial court's denial of defendant's motion to suppress.  The circumstances of the search reflect that defendant was aware of and cooperating in the search and was on notice of the execution of the warrant.  The video evidence of the warrant execution also shows that the law enforcement officers announced their presence before entering the residence, with defendant standing nearby.  Furthermore, the officers executing the search complied with departmental guidelines and directives in turning off their body-worn cameras. The trial court properly found that the law enforcement officers did not act in bad faith by turning off their body-worn cameras and that only potentially useful evidence was lost.

¶ 14       The transcript reflects the factual basis for the plea was sufficient for each charge in the judgment.  The factual basis included a thorough recitation of the evidence presented at the suppression hearing and addressed all charges to which defendant pleaded guilty.

¶ 15       Finally, the trial court did not err in sentencing defendant to the mandatory minimum sentence pursuant to the structured sentencing chart.  Although defendant's trial counsel argued that defendant's sentence should be mitigated due to substantial assistance, the trial court chose to credit defendant with substantial assistance by consolidating the charges for the 7 February 2018 event into one

offense.  The trial court did not err in concluding that defendant's efforts did not rise to the level of substantial assistance to be applied to multiple offenses.

¶ 16        Apart from the potential issues provided by defendant's appellate counsel, our review of the record has revealed no other arguable issues.  Accordingly, we hold the trial court did not err in denying defendant's motion to suppress and in sentencing defendant along statutory guidelines.

## III.    Conclusion

¶ 17        For the foregoing reasons, we dismiss defendant's appeal, grant defendant's petition for *writ of certiorari*, and find no error.

DISMISSED, NO ERROR.

Judge GRIFFIN concurs.

Judge MURPHY dissents by separate opinion.

No. COA20-763 – *State v. Robinson*

MURPHY, Judge, dissenting.

When we conduct an *Anders* review of the Record and identify an issue of arguable merit, we may remand for the appointment of new appellate counsel to provide briefing on that issue. Here, Defendant's appellate counsel was unable to identify any issues of potential merit for appeal and requested that we examine the Record in accordance with *Anders*. After conducting such an examination of the Record, I have identified multiple issues of arguable merit—the application of Defendant's substantial assistance to sentence mitigation under N.C.G.S. § 90-95(h)(5), and whether law enforcement's execution of the search warrant violated the notice requirements of N.C.G.S. § 15A-249. Accordingly, I would remand for the appointment of new appellate counsel to provide briefing on these, and any other, issues of potential merit.

**BACKGROUND**

The Greensboro Police Department arrested Defendant Kenneth Anton Robinson for trafficking "opium or heroin" by possession and possession of a firearm by a felon on 16 December 2016. Defendant was indicted for these charges on 6 February 2017. After his release from custody, Defendant was also arrested for a second charge of trafficking "opium or heroin" by possession on 7 February 2018. Defendant was indicted for the second charge on 7 May 2018.

¶ 20 Defendant moved to suppress evidence related to the 16 December 2016 offenses that the Greensboro Police Department obtained via execution of a search warrant on that date. The trial court held a suppression hearing on 8 July 2019 and denied Defendant's motion to suppress. Without retaining his right to challenge the order denying his motion to suppress, Defendant subsequently pled guilty to all three charges on 9 July 2019. The trial court consolidated the convictions into one judgment, the Class E felony of trafficking in opium by possession for the 7 February 2018 charge. Defendant received an active sentence of 90 to 120 months in accordance with the mandatory minimum sentence of N.C.G.S. § 90-95(h)(4).

¶ 21 Defendant filed a *Notice of Appeal* on 17 July 2019, but in his *Petition for Writ of Certiorari*, Defendant's appellate counsel concedes

> Defendant (and his trial counsel) failed to preserve [] Defendant's right to appeal. Specifically, [] Defendant did not comply with [N.C.G.S.] § 15A-979[,] . . . [which] requires a defendant entering notice of appeal following the denial of a motion to suppress to (1) include in the plea transcript a statement reserving the right to appeal the trial court's judgment, or (2) to orally advise the trial court and prosecutor before plea negotiations have ended that [] Defendant intends to appeal the judgment.

Defendant's appellate counsel petitioned this Court on 29 December 2020 to issue a writ of certiorari for the review of the 9 July 2019 judgment.

¶ 22 In his no-merit brief on appeal pursuant to *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, *reh'g denied*, 388 U.S. 924, 18 L. Ed. 2d 1377 (1967) and *State v.*

*Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985), Defendant's appellate counsel stated he had

> examined the trial court record and relevant cases and statutes and is unable to identify any meritorious issues that could support a meaningful argument for relief on appeal. As such, appellate counsel respectfully asks the Court to examine the [R]ecord on appeal for possible prejudicial error and to determine whether counsel overlooked any meritorious issues.

In response, the State moved to dismiss Defendant's appeal. According to the State, "no reversible error appears on the face of the [R]ecord[,]" and it argues we should deny Defendant's *Petition for Writ of Certiorari*. I disagree with Defendant's appellate counsel's review of the Record, as well as the Majority's analysis of the issues of arguable merit, and would withhold my decision on the bulk of Defendant's *Petition for Writ of Certiorari*.

## ANALYSIS

In accordance with *Anders*, we fully examine the Record to identify any issues of arguable merit. *Anders*, 386 U.S. at 744, 18 L. Ed. 2d at 498 (holding that if a court "finds any of the legal points arguable on their merits (and therefore not frivolous) [in a case in which an *Anders* brief was filed] it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal"). With respect to *Anders* briefs, North Carolina defines a frivolous appeal as "[o]ne in which no justiciable question has been presented and appeal is readily recognizable as devoid of merit in that there is little

prospect that it can ever succeed." *Kinch*, 314 N.C. at 102 n.1, 331 S.E.2d at 667 n.1 (1985) (citing *Frivolous Appeal*, Black's Law Dictionary (5th ed. 1979)).

¶ 24      While the Majority relies on the proper standard for *Anders*, it fails to properly apply it. *Supra* at ¶¶ 10-16. The blanket assertions that the trial court did not err in its analysis of the search warrant execution and application of substantial assistance to mitigate sentencing do not obviate the need for further briefing under *Anders*. *Supra* at ¶¶ 13, 15.

## A. Possible Meritorious Issues on Appeal

### 1. Sentencing

¶ 25      In my examination of the Record, I have identified the following issue of arguable merit: whether the trial court abused its discretion by applying Defendant's "substantial assistance" to only one case under N.C.G.S. § 90-95(h)(5) in light of *State v. Baldwin*. *State v. Baldwin*, 66 N.C. App. 156, 158, 310 S.E.2d 780, 781, *aff'd per curiam*, 310 N.C. 623, 313 S.E.2d 159 (1984); N.C.G.S. § 90-95(h)(5) (2019).

¶ 26      N.C.G.S. § 90-95(h) governs controlled substance trafficking charges, including the mandatory sentencing range for violations of the statute. N.C.G.S. § 90-95(h) (2019). N.C.G.S. § 90-95(h)(5) provides the following regarding mitigation of sentences for violations of the statute:

> Except as provided in this subdivision, a person being sentenced under this subsection may not receive a suspended sentence or be placed on probation. The sentencing judge may reduce the fine, or impose a prison

term less than the applicable minimum prison term provided by this subsection, or suspend the prison term imposed and place a person on probation when such person has, to the best of his knowledge, provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, or principals if the sentencing judge enters in the record a finding that the person to be sentenced has rendered such substantial assistance.

N.C.G.S. § 90-95(h)(5) (2019).

¶ 27        In *Baldwin*, we established that a trial court may apply "substantial assistance" in other cases to mitigate sentencing for the case being heard. *Baldwin*, 66 N.C. App. at 158, 310 S.E.2d at 781. We stated:

> It is clear from the trial court's comments during the sentencing hearing and its finding of fact number 4 that the [trial] court read [N.C.G.S. § 90-95(h)] to limit its consideration of [the] defendant's "substantial assistance" to assistance in the case being heard. [The] [d]efendant argues that the "accomplices, accessories, co-conspirators, or principals" need not be involved in the case for which the defendant is being sentenced, and that [N.C.G.S.] § 90-95(h)(5) therefore permits the trial court to consider [the] defendant's "substantial assistance" in other cases. We agree.

*Id.* I note the relevant statutory section effective at the time the offense was committed in *Baldwin* was not substantially different in any way from the current relevant statutory section quoted above. *Compare* N.C.G.S. § 90-95 (1981), *with* N.C.G.S. § 90-95 (2019).

¶ 28        Here, my review of the transcript reveals the trial court may have improperly

applied N.C.G.S. § 90-95(h)(5), as the trial court may have believed it could only apply

substantial assistance to mitigate sentencing regarding cases on one date, based on

the trial court's following statement:

> There's no doubt in the [trial] [c]ourt's mind and based on everybody's testimony that [Defendant] deserves credit for substantial -- [Defendant] deserves credit for substantial assistance that he provided . . . in the [*16 December 2016*] case. And he's -- the way that credit is going to be delivered is to, therefore -- therefore, consolidate -- consolidate all the cases into the [7 February 2018] event[.]
>
> . . . .
>
> Everything is consolidated into that one offense for -- for a mandatory -- *there was no substantial assistance in that case* -- for the mandatory sentence in that one[.]

(Emphases added). It is not clear whether the trial court understood it could apply

Defendant's substantial assistance to multiple cases on different dates—specifically,

whether the trial court understood it could apply Defendant's substantial assistance

regarding the 16 December 2016 offense to both that offense and the 7 February 2018

offense under N.C.G.S. § 90-95(h)(5). The trial court's potential failure to exercise

discretion by applying substantial assistance to the 7 February 2018 offense could be

prejudicial under *Baldwin*. *Baldwin*, 66 N.C. App. at 161, 310 S.E.2d at 782-83

("Since there was evidence of [the] defendant's 'substantial assistance' before the trial

court, the error was prejudicial.").

As an initial matter, the Majority's assertion that "[t]he trial court did not err

in concluding that [D]efendant's efforts did not rise to the level of substantial assistance to be applied to multiple offenses" is a de novo determination by a majority of a panel of this Court and misconstrues the role of our Court. *Supra* at ¶ 15. Further, it appears to apply a pre-*Baldwin* interpretation of the *availability* of sentence mitigation under N.C.G.S. § 90-95. *Id.* The appropriate issue that requires additional briefing is whether the trial court properly understood its ability to apply the substantial assistance mitigating factor to multiple offenses from multiple dates. If it did, then there was no error; if it did not, then Defendant is entitled to a new sentencing hearing. I would remand for further briefing regarding this issue and how this Court should interpret the language used by, and ruling of, the trial court.

**2. Search of Residence**

**a. Failure to Announce**

¶ 30 An additional potentially meritorious issue on appeal is whether law enforcement violated N.C.G.S. § 15A-249 during the execution of the 16 December 2016 search warrant, as depicted in State's Exhibit 1. *See* N.C.G.S. § 15A-249 (2019). A search warrant was issued on 16 December 2016 for the search of Defendant's residence and a 2009 Honda Accord. N.C.G.S. § 15A-249 requires:

> The officer executing a search warrant must, *before entering the premises*, *give appropriate notice* of his identity and purpose to the person to be searched, or the person in apparent control of the premises to be searched. If it is unclear whether anyone is present at the premises to be searched, *he must give the notice in a manner likely to be*

*heard by anyone who is present.*

N.C.G.S. § 15A-249 (2019) (emphases added).

¶ 31       State's Exhibit 1, which depicts the search of Defendant's residence via a body camera worn by an officer executing the search warrant, shows law enforcement did not announce "police department, search warrant" until after opening both the storm door and the main door of the residence.

¶ 32       However, the Majority inaccurately portrays the evidence in this matter. According to the Majority, "[t]he video evidence of the warrant execution also shows that the law enforcement officers announced their presence before entering the residence, with [D]efendant standing nearby." *Supra* at ¶ 13. This statement is incorrect and incomplete for at least three reasons: (i) the sentence says "[t]he video evidence . . . shows . . . [D]efendant standing nearby[,]" but a review of State's Exhibit 1 does not show Defendant; (ii) a review of State's Exhibit 1 shows the screen door being opened *prior to* the announcement that police were there serving a search warrant; and (iii) a review of State's Exhibit 1 shows what appears to be the main door being opened *prior to* the announcement that police were there serving a search warrant, as analyzed below. *Id.*

**i. Defendant's Presence**

¶ 33       According to the plea hearing transcript, the State's attorney claimed the following during the presentation of the factual basis for the entry of the plea:

> [Defendant] had been taken into custody on unrelated matters that same day and was brought back to the scene while the search warrant was being executed. . . . When they brought him back to the scene, they asked him prior to entering the scene if there was anything that could harm them in any way, any individuals in the house. He indicated that there was not anyone in the home; however, there was a shotgun inside of the house. He told them the location of the shotgun, and at that point, the warrant was executed.

Taking this statement by counsel for the State into account, it does not resolve how close Defendant was to the scene at the time of entry, though it would have been outside the view of the body camera in State's Exhibit 1, which panned the front yard. While I recognize the statement above is relevant to the notice issue, the Majority's conclusion regarding Defendant's "standing nearby" at the time of law enforcement's entry into the residence is not grounded in the video exhibit, testimony, or any findings of fact. *Id.* Additionally, the Majority does not resolve how this impacts the potential violation of Defendant's constitutional or statutory rights during the execution of the search warrant, which further underscores the need for briefing on this issue. Accordingly, I would remand in light of the following:

**ii. Opening of the Storm Door**

¶ 34 Approximately one minute and three seconds into State's Exhibit 1, law enforcement officers open the storm door of Defendant's residence. However, law enforcement did not announce "police department, search warrant" until around one minute and fifteen seconds into State's Exhibit 1, approximately twelve seconds after

opening the storm door. In *Sabbath v. United States*, the Supreme Court of the United States, within the context of analyzing notice requirements for warrant execution, noted entry through a screen door was sufficient to constitute breaking and entering for the purposes of burglary, and drew a comparison between warrant execution and burglary regarding entry into a residence. *Sabbath v. United States*, 391 U.S. 585, 589 n.5, 20 L. Ed. 2d 828, 833 n.5 (1968) (marks and citations omitted) ("While distinctions are obvious, a useful analogy is nonetheless afforded by the common and case law development of the law of burglary: a forcible entry has generally been eliminated as an element of that crime under statutes using the word break, or similar words. . . . What constitutes breaking seems to be the same as in burglary: lifting a latch, turning a door knob, unhooking a chain or hasp, removing a prop to, or pushing open, a closed door of entrance to the house,—even a closed screen door is a breaking."). According to the Supreme Court of the United States, "[a]n unannounced intrusion into a dwelling . . . is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or . . . open a closed but unlocked door." *Id.* at 590, 20 L. Ed. 2d at 834 (footnote omitted).

¶ 35    Law enforcement's opening of the storm door before providing notice is an issue of arguable merit. I would instruct counsel on remand to provide briefing concerning whether law enforcement's opening of the storm door at Defendant's residence prior

to providing notice constituted an entry of the premises to execute a search warrant prior to providing notice, in violation of the requirements of N.C.G.S. § 15A-249.

### iii. Opening of the Main Door

¶ 36 At one minute and thirteen seconds into State's Exhibit 1, law enforcement appears to open the main door to Defendant's residence, approximately two seconds before announcing "police department, search warrant" at around one minute and fifteen seconds into State's Exhibit 1. According to N.C.G.S. § 15A-249, law enforcement must provide notice *before* entering the premises to execute a search warrant. N.C.G.S. § 15A-249 (2019). I note that "[t]he amount of time required between the giving of notice and entering the premises is dependent upon the circumstances of each case." *State v. Sumpter*, 150 N.C. App. 431, 434, 563 S.E.2d 60, 62 (2002); *see also State v. Gaines*, 33 N.C. App. 66, 69, 234 S.E.2d 42, 44 (1977).

¶ 37 Law enforcement's opening of the main door before providing notice is an issue of arguable merit. I would instruct counsel on remand to provide briefing concerning whether law enforcement's opening of the main door at Defendant's residence occurred prior to providing notice and whether such actions violated the requirements of N.C.G.S. § 15A-249.

### b. Ineffective Assistance of Counsel

¶ 38 Defendant's trial counsel did not preserve issues regarding law enforcement's notice under N.C.G.S. § 15A-249 in the execution of the search warrant. This lack of

*MURPHY, J., dissenting.*

preservation by trial counsel is an issue of arguable merit. I would instruct appellate counsel on remand to brief whether there was any related ineffective assistance of counsel claim for failing to preserve the second issue, regarding law enforcement's potential failure to provide appropriate notice under N.C.G.S. § 15A-249, for appeal.

## **CONCLUSION**

¶ 39        After an *Anders* review of the Record, I have identified multiple issues of arguable merit—the application of Defendant's substantial assistance to sentence mitigation under N.C.G.S. § 90-95(h)(5) and whether law enforcement's execution of the search warrant violated the notice requirements of N.C.G.S. § 15A-249. I would allow Defendant's *Petition for Writ of Certiorari* for the limited purpose of remanding for the appointment of new appellate counsel and otherwise hold the petition in abeyance. On remand, I would instruct Defendant's new appellate counsel to provide briefing on the issues identified in this Dissent, as well as any additional issues of arguable merit. For these reasons, I respectfully dissent.